Edgar E. SIMPSON, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 81–7525.

United States Court of Appeals, Eleventh Circuit.

Nov. 12, 1982.

Todd Johnson, Valdosta, Ga., for plaintiff-appellant.

Gregory J. Leonard, Bernard E. Namie, Asst. U.S. Attys., Macon, Ga., for defendant-appellee.

* Honorable Reynaldo G. Garza, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

Before HILL and HENDERSON, Circuit Judges, and GARZA*, Senior Circuit Judge.

GARZA, Circuit Judge:

After receiving Social Security disability benefits for nearly two years, appellant Edgar Simpson was notified that improvement in his condition justified a cessation of those benefits. Simpson responded by filing a claim for continuation of the disability insurance coverage. The Administrative Law Judge (ALJ) who heard the case ruled that while Simpson was still unable to perform his former job, he possessed "the residual functional capacity for at least sedentary work," [1] and, therefore, was not disabled. The termination of benefits which the ALJ ordered is the subject of this appeal.

Edgar Simpson is a forty-three year old man who, prior to the onset of the alleged disability, worked as a truck driver for thirteen years. He contends that the severity of the back pain which he suffers finally forced him to resign from his job. After that time, he attempted to work for several other businesses. On each occasion, however, the number of days he was forced to miss because of the disability prohibited him from continuing employment. He has not worked at all in the past six years.

When Simpson presented his claim to the Social Security Administration in 1976, he was judged disabled and awarded disability benefits. The decision of the ALJ, upon remand from the Appeals Council, is quoted below at great length because of its relevance to the decision of the instant case.

In view of the medical evidence introduced at the original hearing and the evidence just referred to, which was obtained at the request of the Appeals Council, this Administrative Law Judge finds some difficulty in arriving at a decision that this claimant suffers from disabling pain.

1. Record on Appeal, vol. 2, at 17.

However, in view of the prior court decisions and the administrative rulings regarding pain as a disability, this claimant has substantial evidence to support his position. Lay evidence of the claimant's pain abounds, as the claimant's pastor, his wife, his friends and neighbors all attest to their belief that he suffers severe pain and is disabled. His manifestations of pain and disability have so impressed the members of his church that they gave a benefit to raise funds for his care and treatment and also helped provide him with housing. This attitude on the part of claimant's peers in his locality is supported to some extent by medical evidence. The Administrative Law Judge wrote claimant's attending physician for an up-to-date report, and the physician, a general practitioner who has referred him to various doctors during his incapacity, reported as of August 29, 1977. He replied that Mr. Simpson goes regularly to Gainesville, Florida for evaluation, that he has had a ganglion block in an effort to relieve the back pain but he got no relief from this and that in fact he appeared to have even worse pain. The doctor added, "Diagnosis remains the same and the medications are only for pain relief and tension." (Exhibit 35). Dr. Dickson had also on July 25 expressed the opinion that the claimant was totally and permanently disabled due to cystic disease of both kidneys and said he "also suffers severe pain from a lumbar sacral disorder." (Exhibit 37).

Under the circumstances in this case, the Administrative Law Judge felt it both appropriate and necessary to have the testimony of a medical advisor, and at the supplemental hearing, Dr. Robert M. Packer, Jr., a board certified internist, testified.

The testimony of Dr. Packer discounts to a great degree any disability due to kidney disease. It was his opinion that the claimant did have a kidney disorder, but that it had not reached a sufficient level of severity as to cause him the pain and discomfort claimed. In fact, it was the medical advisor's opinion that the claim-

ant's pain (and he did not discount the fact that there was pain) came from a spinal disorder, and it was his suggestion that the claimant be examined by a neurosurgeon and that a myelogram be performed.

In view of Dr. Packer's testimony, the Administrative Law Judge requested the State Agency of Georgia to have the claimant examined by a neurosurgeon, and if it was considered to be medically advisable, and the claimant agreed, to have a myelogram performed. The State Agency replied that myelograms were considered as surgical procedures by their State Agency medical consultants and, according to their guidelines, could not be purchased. The Administrative Law Judge was of the opinion that unless a neurosurgeon was given an opportunity to avail himself of such diagnostic procedures as he felt proper that to pursue the matter further along this line would not bear fruit.

Whatever the cause, the Administrative Law Judge is convinced at this point that the claimant does believe that he suffers constant pain and that this pain affects his ability to function.

In its remand order the Administrative Law Judge was charged with the responsibility of making specific findings as to the credibility of the claimant's complaints of pain and the effect of such pain on his ability to function. In making such findings, the Administrative Law Judge was told to consider as appropriate, such factors as the claimant's "daily activities." It appears that the claimant during his period of disability has attended church fairly regularly. His other activities are quite restricted. He cannot sit for very long at a time, stand for long at a time and he lays down for different periods during the day. If he sits more than a half hour, he has great pain and has to get up which eases him somewhat. His legs bother him continuously. Another factor mentioned by the Council was the kinds, amounts, and frequency of any medications taken. This has been

previously referred to in a discussion of the medical evidence, but to repeat, the record shows that he has had an attempt at blockage of nerves to the hip by ganglion block, which was said to only exacerbate his pain. And while in June he was advised to desist from taking liberal amounts of Percadan and Phenaphen, the testimony at the hearing was to the effect that he was still taking these medications, and the statements by his attending physician substantiate this testimony. Probably the most important factor in evaluating pain is the question of claimant's credibility. In the opinion of the Administrative Law Judge the claimant does suffer pain. He appeared at the hearing to be uncomfortable and depressed. His overall demeanor showed no lack of motivation and substantial citizens in the community attest to his credibility. Thus, the Administrative Law Judge concludes that, while the medical evidence does not point directly to the cause of the pain, that it is such as to support an allegation of pain and does not reflect on claimant's credibility as a witness.

Thus, it is the opinion of the Administrative Law Judge, after careful review of the total record, that the claimant suffers from an impairment or combination of impairments including pain of such a level of severity as to preclude him from engaging in substantial gainful activity. Record on Appeal, vol. 2, at 334–5.

Appellant maintains that his disability benefits have been terminated on the basis of evidence essentially identical to that which formed the basis for the initial award of those benefits.

 It is clear that the Secretary may terminate disability benefits whenever he obtains evidence that a claimant's disability has ceased. 42 U.S.C. § 425; 20 C.F.R. §§ 404.1590(a) and 404.1594(a). However, it is also certain, as the Fifth Circuit declared in *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir. 1973), that "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in absence of proof to the contrary that the condition has remained unchanged." 475 F.2d at 258.

 We are mindful of the limited review which this Court conducts in administrative appeals. We do not have the latitude to freely decide the case as we see fit; we determine only whether the Secretary's finding is supported by substantial evidence. In reviewing the appeal of an initial disability benefits case, we consider whether the Secretary's finding of no disability is supported by substantial evidence. However, in light of principles of administrative res judicata, this is not the proper inquiry in a benefits continuation case.[2] We must ascertain whether the Secretary's finding of *improvement* to the point of no disability is supported by substantial evidence. In each case, the burden remains with the claimant to prove the existence of a disability. *Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir. 1981). If, however, the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. Otherwise, termination of benefits will often depend not on a finding of changed condition, but simply on the whim of a changed ALJ. With this in mind, we turn to an examination of the evidence presented at each hearing.

At the initial benefits request hearing, Simpson alleged two medical conditions as causes of his pain. First, he claimed that polycystic kidney disease was the source of his debilitating pain.[3] He also maintained

---

**2.** A cogent statement of the effect of ignoring res judicata was provided in *Shaw v. Schweiker,* 536 F.Supp. 79 (E.D.Pa.1982):

> After a final determination of disability, if a termination of benefits were effected without a showing either of improvement or newly-discovered evidence, such a termination would of necessity be based on whim or

caprice or would constitute an impermissible relitigation of facts and determinations already finally decided.

536 F.Supp. at 83.

**3.** Polycystic kidney disease is an inherited kidney disorder characterized by the presence of many bilateral cysts which cause enlargement

that osteoarthritis contributed to his disability.[4] The medical testimony on these conditions revealed that Simpson was asymptomatic with regard to the kidney disease and that his objective back impairment was minor. None of the doctors doubted the claimant's sincerity about the pain he was experiencing. This pain was reiterated by Simpson himself, as well as his family, friends, and pastor. It is the pain which prompted the ALJ to find Simpson disabled.

We now consider whether his condition has improved since the award of disability benefits. At the 1979 hearing, a host of family and friends again testified that Simpson was in extreme pain much of the time and that his activities were extremely limited. His wife related that he often took excess pain medication because of the extreme pain he suffered. A number of persons testified that Simpson's pale face often served as a mirror of the ravages within. The persons with whom Simpson is in closest contact, therefore, continue to be convinced of the sincerity of his complaint. The medical testimony offered continues to show the same weakness that was evident at the first hearing. One doctor, while noting that the "physical examination showed some reduction in range of motion of the dorso-lumbar spine . . .," reported that x-rays of the claimant's lumbar spine were within normal limits. Apparently, this doctor's report was the basis of the Secretary's decision to terminate Simpson's benefits. Shortly after the report was made, Simpson was informed:

> You were initially found to be disabled because of kidney disease and back problems. You have indicated that you are still unable to return to work because of constant back pain, which limits you in walking, bending, standing and sitting, and high blood pressure. The evidence in file shows that your blood pressure is somewhat elevated, but there are no sec-

ondary complications that would render you disabled. Although you continue having some limitation of motion in your back, x-rays show no abnormalities, and you are able to get about quite well. Studies show no current evidence of kidney problems. Complete physical examination shows no other evidence of impairment in any respect. There is no indication that you are disabled according to the definition of the law.

Record on Appeal, vol. 2, at 341. The above-quoted letter ignores the fact that the basis for the original award of disability was not the minimal objective signs of back or kidney problems, but the debilitating pain which Simpson continues to suffer. The diagnosis upon which the Secretary relied to terminate appellant's benefits was no startling revelation. The same diagnosis had been made previously by different physicians and included in the record of the first hearing.[5]

Pain can be disabling "even when its existence is unsupported by objective medical evidence if linked to a medically determinable impairment." *Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir. 1981). In this case, a doctor did report that Simpson's back x-rays were within normal limits. However, in the same report, he also described his physical examination finding of appellant's limited range of motion and the pain which that motion occasioned. This physician did find a medically determinable impairment, albeit of small magnitude. Another doctor reported no change in the back condition either symptomatically or functionally since the disability was first declared.[6] In sum, Simpson continues to manifest the same medically determinable impairments and consequent pain that resulted in the disability ruling. For this reason, we must hold that the Secretary's

---

of the kidney, as well as reduced function thereof. It is a disease which progresses slowly over a number of years.

**4.** Osteoarthritis is a type of joint or bone disease in which the structures degenerate.

**5.** Record on Appeal, vol. 2, at 280, 307.

**6.** Record on Appeal, vol. 2, at 392.

most recent decision in this case is not supported by substantial evidence.[7]

REVERSED.

---

7. In light of our decision, we refrain from needlessly discussing the other points of error which Simpson raises.