Dorothy M. VAUGHN,
Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 83–8235.

United States Court of Appeals,
Eleventh Circuit.

March 19, 1984.

Rachael G. Henderson, Americus, Ga., for plaintiff-appellant.

Frank L. Butler, III, John L. Lynch, Macon, Ga., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Appellant Dorothy Vaughn appeals the district court's affirmance of an agency decision terminating her Supplemental Security Income ("SSI") benefits and denying her

initial application for Social Security disability benefits. We reverse.

## I.

Dorothy Vaughn is a 59-year old resident of Americus, Georgia, who works part-time as a maid.[1] In light of a history of mental illness, specifically chronic schizophrenia,[2] she was approved for disability benefits under a Georgia state plan in December, 1971. At that time, she was adjudged permanently and totally disabled under the existing criteria.

In 1974, the Supplemental Security Income Program, 42 U.S.C.A. §§ 1381–83 (West 1983), became effective on a federal level. That program took the place of state-administered plans by providing benefits directly to "disabled" citizens. A "grandfather clause" in the legislation commanded that any person "permanently and totally disabled" under an authorized state plan would maintain that status in the federal scheme. 42 U.S.C.A. § 1382c(a)(3)(E) (West 1983). Thus, Vaughn continued to receive benefits under the SSI program.

In April 1981, Vaughn received a letter notifying her that the Secretary of Health and Human Services ("Secretary") was developing current evidence to determine whether her condition prevented her from obtaining "substantial gainful activity."[3] Shortly after that letter, her SSI benefits were terminated.

Vaughn then applied for a period of disability benefits under Title II of the Social Security Act. 42 U.S.C.A. § 423 (West 1983). An Administrative Law Judge ("ALJ") denied her initial application for disability benefits, finding that she was not "disabled" because her impairment "does not prevent the performance of ... past relevant work." The judge also upheld the termination of SSI benefits because, upon review of current evidence, he determined that her past disability had ceased.

After the Secretary's Appeals Council upheld the ALJ's decisions, Vaughn sought judicial review in the district court.[4] The district court affirmed the agency's rulings, finding substantial evidence to support them in the record.

On appeal, Vaughn argues that the district court erred in affirming the agency decisions, i.e., both the denial of the disability benefits and the termination of her SSI benefits.

## II.

### A. Denial of Disability Benefits

■ 42 U.S.C.A. § 423(d)(1) (West 1983) provides that individuals with disabilities may be entitled to monthly disability insurance benefits. The term "disability" is defined as follows:

> Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for continuous periods of not less than 12 months. . . .

42 U.S.C.A. § 423(d)(1)(A) (West 1983).[5] In filing a claim for benefits, a claimant has

1. Vaughn has worked for one family for 35 years. She currently works three days a week, but has worked up to six days a week during her tenure. As will be explained below, her minimal earnings have not affected her eligibility to receive SSI benefits.

2. Schizophrenia is defined as "any of a group of severe emotional disorders characterized by misinterpretation and retreat from reality, delusions, hallucinations, ambivalence, inappropriate effect, and withdrawn, bizarre or regressive behavior." *Dorland's Illustrated Medical Dictionary* (25th ed. 1974).

3. This phrase will be explained with other statutory requirements below.

4. Jurisdiction to review the Secretary's decision was premised on 42 U.S.C.A. § 1383(c)(3) (West 1983).

5. 20 C.F.R. § 404.1520 (1983) establishes the general procedure for determining when a disability exists. If a person is working at a "substantial gainful activity," 20 C.F.R. § 404.-1571 *et seq.* (1983), then there is *no* disability. If a person does not have such employment, she can either be found presumptively disabled by reason of a specific "listed impairment" deemed disabling by the Secretary, 20 C.F.R. § 404.1520(d) (1983), or her non-listed impairment will be examined to determine its effect on her current ability to work. If the claimant

the burden of proving disability, *Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir.1981),[6] and we will not disturb an agency finding of "no disability" unless the record lacks substantial evidence to support that conclusion, 42 U.S.C.A. § 405(g) (West 1983); *See, e.g., Allen v. Schweiker,* 642 F.2d 799, 800 (5th Cir.1981), or the conclusion was derived from faulty legal premises. *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983).

■ In the hearing before the ALJ, there was oral testimony from Vaughn and her sister, Ms. Ernestine Moore. Vaughn testified about her work and discussed her mental problems. Ms. Moore testified at length about Vaughn's mental illness, which manifests itself in hallucinations, moodiness, nervousness, and suspicion.

Three affidavits from medical experts were also considered and discussed. Paul Mandeville, a clinical psychologist, diagnosed Vaughn as having "borderline intellectual functioning" and "residual schizophrenia in good remission." He determined that she had the understanding to "cope with simple unskilled or familiar work routines," but did stress that the remission of her schizophrenia was due, in part, to the familiarity of her current daily routine.

Dr. S. Taylor, who has treated Vaughn on an outpatient basis, confirmed that she was schizophrenic. He had placed her on medication to aid remission and found no particular oddities in her behavior, except for occasional hallucinations. Finally, Martha Smith, a nurse who has treated Vaughn, explained that while the patient can perform simple or repetitive tasks, her mental impairment seriously affects her ability to perform complex tasks, to follow instructions, or to have frequent contact with other people.[7]

After reviewing this evidence, the ALJ[8] concluded as follows:

> [The] claimant has the residual functional capacity to perform simple, repetitive, unskilled or familiar work routines. Her past relevant work as a maid in private homes was unskilled and is familiar to her. Therefore, Regulation 404.1520 would require that she be found "not disabled."

This conclusion states, in essence, that because Vaughn can perform her past work, she cannot be considered disabled.

It is undisputed that Vaughn's current job as a maid is *not* "substantial gainful activity." Her work has always been compensated at a level significantly below the earnings level at which work becomes gainful.[9] In ruling that she was not disabled, the Administrative Law Judge inconsistently held that her past *insubstantial* gainful activity demonstrated her ability to perform *substantial* gainful activity. Because her past work has not been substantial, it was an error of law to conclude that her performance of it disqualifies her from receipt of disability benefits.

---

lacks the capacity to perform "past relevant work," then it will be determined whether she can do other "substantial gainful work." 42 U.S.C.A. § 423(d)(2), (4) (West 1983); 20 C.F.R. § 404.1520(f)(1) (1983).

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

7. A final affidavit, prepared by Vaughn's employer Ms. Emmie Halstead, was not before the ALJ but did appear in the record prior to the decision of the Secretary's Appeals Council and was considered in that decision. It stated that Vaughn could perform the tasks which had become routine after 35 years, but that minor variations caused her to become quite nervous. It was Halstead's opinion that Vaughn could not function in any job with more pressure.

8. Because the ALJ's conclusions were adopted by the Secretary's Appeals Council, they provide the rationale for the agency decision.

9. When Vaughn's application for disability benefits was filed in 1981, she was earning $27 per week or approximately $120 per month. 20 C.F.R. § 404.1574(b)(3) establishes that, for calendar years after 1979, a person earning less than $190 per month will generally not be considered to have held "substantial gainful activity." The ALJ acknowledged that Vaughn "is not currently engaging in substantial gainful activity."

Having found that the ALJ incorrectly credited Vaughn's "past relevant work" as dispositive of the disability issue, we must remand to the Secretary for further proceedings. On remand, the appropriate question is whether, given Vaughn's capacity, age, education and work experience, she is able to do substantial work within the national economy. 20 C.F.R. § 404.-1520(f)(1) (1983). This "substantial work" must, of necessity, amount to more than she is currently performing.[10]

### B. *Termination of SSI Benefits*

The 1971 state determination that Vaughn was disabled was presumed valid when the SSI program was initiated in 1974. 42 U.S.C.A. § 1382c(a)(3)(E) (West 1983). Because of the presumptive validity of that decision, there can be no termination of SSI benefits until there is substantial evidence of actual improvement to the point of no disability. *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982). *See also Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981). This presumption is necessary to avoid re-litigating the evidence presented in support of the initial administrative decision.[11]

In the proceeding below, the ALJ focused only on current evidence of whether Vaughn was disabled. Because *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982), requires evidence of *improvement* to support a termination of benefits, the ALJ was also required to evaluate the medical evidence upon which Vaughn was originally found to be disabled. Without such a comparison, no adequate finding of *improvement* could be rendered. We therefore reverse and remand for application of the proper legal standard.[12]

### III.

The case is reversed and remanded to the district court with instructions that it be returned to the Secretary for further proceedings not inconsistent herewith.

REVERSED and REMANDED.

---

**10.** We note that there is strong evidence in this record that Vaughn may not be able to do more work that she now does. Her own testimony, and that of Ms. Moore and Ms. Halstead, is to this effect. Similarly, Dr. Mandeville's report indicates that her structured environment helps maintain her remission. On the other hand, there is some inference that Vaughn may be able to work five days a week, rather than three, although there is no evidence that five days of her work would constitute substantial gainful employment. Also Dr. Mandeville's report states that she is in "present good remission" and that she "retains understanding enough to cope with simple unskilled or familiar work routines." Finally, Dr. Taylor's report states that Vaughn's condition has resulted in no marked restriction of her daily activities, although we have some question about the value of Dr. Taylor's brief report, which contains no clinical or laboratory findings. *See Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981) (Unit B).

**11.** *See Shaw v. Schweiker,* 536 F.Supp. 79, 83 (E.D.Pa.1982) ("After a final determination of disability, if a termination of benefits were effected without a showing either of improvement or newly-discovered evidence, such a termination would of necessity be based on whim or caprice or would constitute an impermissible relitigation of facts and determinations already finally decided").

**12.** Of course, if the Secretary concludes on remand that Vaughn is currently disabled, *see supra* note 10, then she would be entitled to a continuation of her SSI benefits, and there would be no need to apply the *Simpson v. Schweiker* analysis.