Nellie P. THOMAS, Mamie Johnson, and Robert L. Benford, individually and on behalf of all others similarly situated, Plaintiffs,

State of Alabama, ex rel. Charles A. Graddick as Attorney General, and Charles A. Graddick as Attorney General, Plaintiff-Intervenors,

v.

Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.

Civ. A. No. 83–T–826–N.

United States District Court, M.D. Alabama, N.D.

Aug. 15, 1984.

Lawrence F. Gardella, Legal Services Corporation of Alabama, Montgomery, Ala., Joseph E. Carr, IV and Gabrielle Wehl, Legal Services Corporation of Alabama, Mobile, Ala., for plaintiffs.

Herndon Inge, III, Inge, McMillan & Inge, Mobile, Ala., for Joseph Thames, Jr., member of Plaintiff Class.

Rosa H. Davis, Russell C. Stoddard, Asst. Attys. Gen., Montgomery, Ala., for plaintiff-intervenors.

John C. Bell, U.S. Atty., Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., Randolph W. Gaines, Deputy Asst. General Counsel for Litigation, Gabriel L. Imperato and Anne Sirota, Dept. of Health & Human Services, Baltimore; Md., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs Nellie P. Thomas, Mamie Johnson and Robert L. Benford, who are Alabama citizens, have brought this class action lawsuit challenging the refusal of defendant Secretary of Health and Human Services to follow the settled law of the Eleventh Circuit in terminating the payment of benefits under Title II of the Social Security Act, 42 U.S.C.A. §§ 401–433, and Title XVI of the Act, 42 U.S.C.A. §§ 1381–1385. The State of Alabama and its Attorney General have also been allowed to intervene as plaintiffs.

Pointing to *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982), the plaintiffs claim that the Secretary may not terminate benefits without producing evidence that a recipient's medical condition has substantially improved since the initial finding of disability. The Secretary, on the other hand, contends that she is not bound by *Simpson* and that she may terminate benefits at any time upon a new finding, based on current evidence, that a prior recipient is not disabled, notwithstanding the complete absence of evidence that the recipient's medical condition has improved.

This lawsuit is now before the court on the plaintiffs' (1) request for a class-wide preliminary injunction and (2) request for certification of a plaintiff class. For reasons which follow, both requests are due to be granted.

## I. BACKGROUND

Titles II and XVI of the Social Security Act provide benefits to persons determined to be "disabled" and entitled to benefits under the Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) programs. Under both Titles, disability is defined as "inability to engage in any substantial gainful activity by rea-

son of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A).

A recipient is entitled to disability benefits only so long as the disability continues to exist. 42 U.S.C.A. §§ 423(a)(1), 1383(a)(5). The procedure for review of continued eligibility for benefits is essentially similar to the procedure followed in the initial application for benefits. A recipient of benefits is contacted by the Disability Determination Division of the Alabama Department of Education, the state agency working under contract with the Secretary to make disability determinations. The recipient is told that his or her case is being reviewed to determine whether he or she is still disabled. If the state agency determines that the recipient is no longer disabled the recipient is so informed, and the Secretary terminates benefits shortly thereafter. A recipient dissatisfied with the initial determination is afforded an administrative review procedure, which includes an opportunity for reconsideration by the state agency, a hearing before a Social Security administrative law judge and a review by the Social Security Appeals Council at the discretion of the council. A recipient still dissatisfied may seek review in the federal courts. 42 U.S.C.A. § 405(g). Also, under certain circumstances, persons whose benefits have been terminated may continue to receive them until a determination adverse to their claim is made by the administrative law judge. 42 U.S.C.A. § 423(g)(1).

In 1980, Congress mandated that disability benefits eligibility be reviewed at least once every three years. 42 U.S.C.A. § 421(h)(1). This mandate for continuing disability review was implemented in Alabama in early 1981, causing an approximately five-fold increase in the number of cases reviewed by the state agency. Prior to this time, eligibility review had been conducted on an irregular basis under a "medical diary" procedure which targeted certain cases in which disabilities might be expected to cease.

In the late 1970's or early 1980's, the Secretary altered the standard for periodic review of disability cases. Under the former standard, benefits were continued unless there was evidence that the medical condition for which the recipient had originally been awarded benefits had significantly improved. In other words, the review standard focused on whether there had been a medical improvement. Under the new standard, current medical evidence generated in the twelve months preceding the review is examined to determine whether the recipient has a present condition considered disabling. In other words, the previous finding of disability is given no effect and the recipient's condition is evaluated as if he or she were presenting an initial application for disability benefits. No effort is made to determine whether the condition upon which the original finding of disability was based has improved. *See* 20 C.F.R. §§ 404.1579, 404.1586, 404.1594, 416.994; 45 Fed.Reg. 55,568 (1980).

In 1982, the Eleventh Circuit Court of Appeals in *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982), expressly rejected the Secretary's use of the current evidence standard, concluding instead that there must be some evidence of medical improvement before a recipient's benefits may be terminated. The appellate court stated that "[i]f ... the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. Otherwise, termination of benefits will often depend not on a finding of changed condition, but simply on the whim of a changed [Administrative Law Judge]." 691 F.2d at 969.

The Secretary refused to comply with *Simpson* except when directed to do so in a specific case. She continued to limit her administrative review of continuing disability cases to current medical evidence, with no effort at comparing that evidence with the evidence that supports the initial finding of disability.

The Secretary's change in standards and her refusal to comply with *Simpson* were more than semantic. The application of the standard has led to the termination of disability benefits in a flood of cases in Alabama.

Among the many who had their benefits terminated under the current evidence standard are plaintiffs Nellie P. Thomas, Mamie Johnson, and Robert L. Benford. Thomas was initially found disabled due to a back impairment and received Title II benefits. Johnson was initially found disabled due to coronary and disc disease and received Title II and Title XVI benefits. And Benford was initially found disabled due to mental impairments and received Title II benefits. In each case, the administrative law judge who determined whether the plaintiff was entitled to continued disability benefits focused entirely on the plaintiff's present condition. No comparison was made with the evidence which supported the original determination of disability, nor was there a finding that the plaintiff's condition had improved.

The plaintiffs have now brought this class action lawsuit challenging the Secretary's systematic refusal to comply with the law of the Eleventh Circuit unless directed to do so in a specific case by a federal court. The plaintiffs seek a preliminary injunction requiring that the Secretary immediately comply with *Simpson* and restore those benefits terminated under the current evidence standard. The benefits are to be restored until the recipients have had their cases reviewed under the *Simpson* standard. The plaintiffs also seek to represent a class of all past and present Alabama disability benefits recipients who have had or will have their benefits terminated by application of the current evidence standard.

After the plaintiffs had their benefits terminated and in response to public criticism of the Secretary's actions, the Governor of the State of Alabama directed on September 19, 1983, that the state agency halt initial processing of benefits termination recommendations. This order did not affect recipients already in the review process. Later, on April 13, 1984, the Secretary publicly announced a moratorium suspending reviews of, and continuing or restoring benefits in, continuing review cases where persons have not received a "final decision" from the Secretary. The moratorium does not apply to claimants who have cases now pending in the federal courts or who have cases that have been remanded by the courts to the Secretary. Nor does it apply to persons who failed to pursue cases through the administrative process in a timely fashion, or who failed to seek judicial review within the time allowed. And it does not apply to reviews conducted under the "medical diary" procedure.

## II. REQUEST FOR PRELIMINARY INJUNCTION

In order for a preliminary injunction to issue, the district court must be satisfied that the party seeking injunctive relief has clearly met each of the following four prerequisites: (1) that there is a substantial likelihood of success on the merits, (2) that without the relief the party seeking the injunction will suffer irreparable harm, (3) that the threatened injury to the party seeking relief outweighs the threatened injury to the party opposed, and (4) that the public interest will not be disserved by granting the injunctive relief. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354–55 (11th Cir. 1983). The plaintiffs have satisfied these prerequisites.

### 1. Substantial Likelihood of Success on the Merits

The plaintiffs have established a very high likelihood of success on the merits.

The law of this circuit, announced in *Simpson,* clearly requires that disability benefits not be terminated without substantial evidence of improvement in the recipient's condition. 691 F.2d at 969. And more recently, the appellate court further observed that proper application of this standard requires a comparison of the current medical evidence with the evidence

upon which the recipient was originally found disabled. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984) (per curiam).

The medical improvement standard, or something very close to it, has been widely applied in the federal appellate courts, and "there does not appear to be any significant circuit conflict on this point at present," *Heckler v. Lopez*, 463 U.S. 1328, ——, 104 S.Ct. 10, 12 (1983) (Rehnquist, Circuit Justice). *See, e.g., Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir.1983); *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237–38 (3rd Cir.1983); *Patti v. Schweiker*, 669 F.2d 582, 586–87 (9th Cir.1982); *Hayes v. Secretary of Health, Education and Welfare*, 656 F.2d 204, 206 (6th Cir.1981).

Nonetheless, the Secretary refuses to apply the medical improvement standard except when directed to do so by a federal court in a specific case. She continues to limit her administrative review to current medical evidence, with no effort at comparing that evidence with the evidence that supported the original finding of disability.

The Secretary makes at least two arguments in support of her actions. First, she argues that the medical improvement standard is erroneous. This argument is not appropriate for consideration by this court. As a district court, this court is bound to follow the law as announced by the Eleventh Circuit in *Simpson* and recently reaffirmed in *Vaughn*. *See Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981) (en banc).

Second, she argues that she is empowered, like the courts, to interpret the law. The court agrees that the Secretary is empowered by law to promulgate regulations necessary for the effective administration of the Social Security system; and it follows naturally that she must interpret the law to make these regulations. However, it is a fundamental precept of our government that the federal judiciary is supreme in the exposition of federal law. *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S.Ct. 1401, 1409–10, 3 L.Ed.2d 19 (1958); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Thus, the Secretary's interpretation of the law is inferior to the interpretations made by courts of competent jurisdiction. With some modification to meet present facts, what the former Fifth Circuit said in *N.L.R.B. v. Gibson Products Co. of Washington Par., La., Inc.*, 494 F.2d 762 (5th Cir.1974), is apposite here:

> [*Simpson*] is the law of this Circuit and is binding on the [Secretary], however great [her] displeasure with it, as it is on us. It is the law which all must follow until such time as the Court *en banc* overrules the principle or the United States Supreme Court reaches a contrary decision.

494 F.2d at 766.[1]

In conformity with this precept, the Social Security Act recognizes the primacy of the courts in determining the law. Although the Act provides that "[t]he findings of the Secretary as to any *fact*, if supported by substantial evidence, shall be conclusive," the Act further provides that the actions of the Secretary are subject to judicial review to determine whether the Secretary has complied with the law. 42 U.S.C.A. § 405(g) (emphasis added). *See also* 42 U.S.C.A. § 1383(c)(3) (incorporating § 405(g) by reference).

Therefore, in refusing to follow the law of this circuit as announced in *Simpson*,

---

**1.** Relying on *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) the Secretary contends that she is not bound to apply *Simpson* to individual disability termination determinations. The court disagrees. In *Mendoza*, the Supreme Court held simply that the doctrine of nonmutual collateral estoppel does not apply to the United States. The Court reasoned that it would be unfair and would entail a waste of government resources to require the government to appeal from every ad-

verse decision of a district court. Before the government may be precluded from relitigating a point of law in later cases within a circuit, the government is entitled to a decision on that point from the circuit court of appeals. In the Eleventh Circuit, the Secretary has had her chance to litigate the proper standard to be applied to disability termination hearings. That standard was announced in *Simpson* and is now the law of this circuit.

the Secretary has acted and is acting outside the law, flouting both the statutory and constitutional law of this land.

### 2. Irreparable Injury

The evidence before this court reflected that the plaintiffs and members of the class are now unable to pay for medicines, clothing, shelter, food, and transportation because of the termination of their benefits. As a result, many have lost or are in danger of losing major possessions, many now suffer from anxiety, depression and a substantial decline in health, and some have even died. Retroactive restoration of benefits would obviously be inadequate to remedy these hardships. *See Lopez v. Heckler*, 725 F.2d 1489, 1497 (9th Cir.1984) ("[S]ome class plaintiffs have already died or suffered further illness as a result of the Secretary's action"); *Hyatt v. Heckler*, 579 F.Supp. 985, 995 (D.N.C.1984) ("The termination and the unjustified denial of Social Security disability benefits cause irreparable harm to eligible persons.")

### 3. Relative Threatened Harms

As the Ninth Circuit, faced with a case identical to the instant, stated,

[p]laintiffs do not attempt to match in dollars and cents the monetary harms that will allegedly be suffered by the government. Yet the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government.

\*     \*     \*     \*     \*     \*

Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.

*Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir.1983) (on emergency motion for partial stay pending appeal).

### 4. Public Interest

Titles II and XVI reflect a public mandate for the provision of funds to meet the needs of persons unable to work due to disability. The public interest therefore commands that this court take all necessary and appropriate steps to assure that the Secretary fully meets her obligations under Titles II and XVI. Obviously, her paramount obligation under these Titles is compliance with the law.

Furthermore,

society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges.... It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time.

*Lopez v. Heckler*, 713 F.2d at 1437.

### III. REQUEST FOR CLASS CERTIFICATION

The plaintiffs have moved pursuant to Fed.R.Civ.P. 23(a) & (b)(2) for a plaintiff class defined as follows:

[A]ll persons in the State of Alabama:

a. Who have applied for disability benefits under the Social Security Disability Insurance ("SSDI") or the Supplemental Security Income ("SSI") programs or both;

b. Who have been found by the Secretary to be under a disability as defined in the Social Security Act and determined to be eligible for monthly disability benefits under either the SSDI or the SSI program or both;

c. Who have had or will have their disability benefits terminated without the defendant Secretary finding that there has been a change in their medical condition since the time that she determined that they were under a disability or without the defendant Secretary according any presumptive effect to the prior determination of disability; and

d. Who are not ineligible for SSDI or SSI for any of the following reasons: return to substantial gainful activity; whereabouts becoming unknown; failure to cooperate; other financial fac-

tors; or due to an admitted recovery from disability.

■ The question of class certification pursuant to Rule 23(a) & (b)(2) is a procedural one distinct from the merits of the action. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Huff v. N.D. Cass Co.*, 485 F.2d 710 (5th Cir. 1973) (en banc). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Nevertheless, the court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). To meet the requirements for a class under Rule 23(a) & (b)(2), the class must be "so numerous that joinder of all members is impracticable," Rule 23(a)(1); there must be questions of law or fact common to the class, Rule 23(a)(2); the claims or defenses of the representative parties must be typical of the claims or defenses of the class, Rule 23(a)(3); the representative parties must be able to "fairly and adequately protect the interest of the class," Rule 23(a)(4); and the "party opposing the class" must have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," Rule 23(b)(2).

The named plaintiffs have met these requirements. The putative class involves thousands of persons. It is thus impracticable to join them all. The legal issue or claim presented—that the Secretary has refused to comply with *Simpson*—is common for all members of the putative class. The named plaintiffs have fairly and adequately protected the interest of the class, and there is no reason to doubt that they will continue to do so. And finally, the Secretary has acted on grounds generally applicable to the class, thereby making any

injunctive and declaratory relief appropriate to the class as a whole.

The court's inquiry into the appropriateness of certifying a plaintiff class does not end here, however. The Secretary contends that the court is without *jurisdiction* to certify a class.

The jurisdiction of the court has been invoked pursuant to 42 U.S.C.A. § 405(g), the statutory provision authorizing judicial review of decisions of the Secretary.[2] Section 405(g) provides in relevant part as follows:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

This section is viewed as generally specifying two requirements for judicial review: (1) a final decision made after a hearing; and (2) commencement of a civil action within 60 days after the mailing of notice of such decision, or such further time as the Secretary may allow. The Supreme Court has held that class-based relief under section 405(g) is not inconsistent with the need for case-by-case adjudication, so long as the putative class meets the requirements of section 405(a) as well as Rule 23(a) & (b)(2). *Califano v. Yamasaki*, 442 U.S. 682, 698–701, 99 S.Ct. 2545, 2556–57, 61 L.Ed.2d 176 (1979).

### 1.

The final decision requirement of section 405(g) has two elements, the first non-waivable and the second waivable. The non-waivable element is that a claim must have been presented to the Secretary; and the waivable element is that the administrative remedies prescribed by the Secretary must have been exhausted. *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

**2.** The plaintiffs also contend that this court has mandamus jurisdiction under 28 U.S.C.A.

§ 1361. The court does not reach this contention at this time.

Some courts have indicated that the mere termination of benefits satisfies the non-waivable presentation element. *See, e.g., Kuehner v. Schweiker,* 717 F.2d 813, 817 (3d Cir.1983), *petition for cert. filed, sub nom. Heckler v. Kuehner,* — U.S. —, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984); *Ellison v. Califano,* 546 F.2d 1162, 1164 (5th Cir.1977); *Kennedy v. Harris,* 87 F.R.D. 372, 376 (S.D.Cal.1980). In *Lopez v. Heckler,* 725 F.2d 1489 (9th Cir.1984), the Ninth Circuit explained that underlying these cases "is the theory that the claimant's failure to report that his disability has ceased constitutes a continuing claim for benefits and that that claim is denied when the Secretary terminates the benefits. All of the class members here have had their benefits terminated by the Secretary and have thus met the presentation requirement as defined by these courts." 725 F.2d at 1503.

■ Nevertheless, in this case the court understands that each class member has returned to the Secretary a completed questionnaire indicating that he or she is still disabled and entitled to benefits. The Supreme Court has already found such responses adequate to satisfy the non-waivable presentation element. *Mathews v. Eldridge,* 424 U.S. at 329, 96 S.Ct. at 900. The plaintiffs have satisfied the presentation element.

The plaintiffs have also satisfied the exhaustion element. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court observed that:

Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765, 95 S.Ct. at 2467. Thus, exhaustion is not required where the Secretary has taken a firm position on the determinative issue which is statutory or consti-

tutional, and exhaustion by definition would be futile. Furthermore, the Supreme Court has recognized that the exhaustion element may be waived over the Secretary's objection in cases "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900.

■ The circumstances depicted above are present here. The Secretary has taken a firm position on an issue of law, not fact, that is for the most part determinative of the class members' cases. Furthermore, the class members need to have this issue resolved immediately. Further administrative review of their claims would not vindicate their legal right to have the Secretary apply the correct standard *before* their benefits are terminated. Moreover, the evidence reflects that the Secretary's policy is causing suffering and despair on a mass scale. Retroactive restoration of benefits could not begin to compensate these victims. Under these circumstances, the court is compelled to conclude that the exhaustion element must be waived, and thus must be considered satisfied.

### 2.

■ The court recognizes that there is some authority to support the Secretary's position that this court is without jurisdiction over those claimants who failed to meet the 60-day requirement of section 405(g). *See Heckler v. Lopez,* — U.S. —, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984) (application for stay); *Heckler v. Lopez,* — U.S. —, 104 S.Ct. 221 (1983) (Stevens, J., concurring in part and dissenting in part) (on emergency application for stay); *Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice) (on emergency application for stay). Nonetheless, for the following reasons the court rejects at this time the Secretary's efforts to limit the class to only those who have met this requirement. First, there is support in the law for the plaintiffs' position that the 60-day require-

ment is not jurisdictional, and thus may be waived in unusual circumstances such as those presented in the present case. *See Lopez v. Heckler,* 725 F.2d 1489, 1504–07 (9th Cir.1984). Second, it appears that this issue may soon be resolved by the United States Supreme Court. *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984). Should the Supreme Court find that the requirement does preclude jurisdiction in cases such as the present one, this court need only redefine the class.

### 3.

Although for purposes of provisional certification the plaintiffs have satisfied the requirements of Rule 23(a) & (b)(2) and section 405(g), the court declines to certify the class as broadly as requested by the plaintiffs. The thrust of this lawsuit is that the Secretary has failed to comply with *Simpson.* The court will therefore limit the class to those recipients whose benefits were terminated on or after the date *Simpson* was decided, November 12, 1982.

### IV.

For the reasons given above, the court will enter a preliminary injunction requiring, among other things, that the Secretary comply with *Simpson* and restore benefits terminated under the current evidence standard. However, the restoration requirement will not extend to the entire plaintiff class.

Several Justices of the United States Supreme Court have expressed substantial concern whether the 60-day requirement in section 405(g) is waivable. *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 2164, 80 L.Ed.2d 548 (1984) (application for stay); *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983) (Stevens, J., concurring in part and dissenting in part) (on emergency application for stay); *Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 77

L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice) (on emergency application for stay). In light of these concerns and rulings, the court will not extend injunctive relief to those members of the plaintiff class who received "final decisions" from the Secretary more than 60 days before the filing of the class action aspect of this lawsuit on December 28, 1983, i.e. October 29, 1983, and who did not seek judicial review of those decisions in a timely manner.[3]

An appropriate order will be entered.

### ORDER

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the plaintiffs' January 13, 1984, motion for class certification, as renewed on August 6, 1984, be and it is hereby granted to the extent hereafter set forth;

(2) That the following class be and it is hereby certified, to be represented by named plaintiffs Nellie P. Thomas, Mamie Johnson, and Robert L. Benford:

All persons in the State of Alabama:

a. Who have applied for disability benefits under the Social Security Disability Insurance ("SSDI") or the Supplemental Security Income ("SSI") program or both;

b. Who have been found by the Secretary to be under a disability as defined in the Social Security Act and determined to be eligible for monthly disability benefits under either the SSDI or the SSI program or both;

c. Who had their disability benefits terminated on or after November 12, 1982, or will have their disability benefits terminated without the defendant Secretary finding that there has been a change in their medical condition since the time that she determined that they were under disability, or without the defendant Secre-

---

**3.** Other reported cases in which similar or more extensive injunctive relief has been granted include *Lopez v. Heckler,* 725 F.2d 1489 (9th Cir. 1984); *Holden v. Heckler,* 584 F.Supp. 463 (N.D. Ohio 1984); *Avery v. Heckler,* 584 F.Supp. 312 (D.Mass.1984); *Hyatt v. Heckler,* 579 F.Supp. 985 (D.N.C.1984).

tary according any presumptive effect to the prior determination of disability; and

d. Who are not ineligible for SSDI or SSI for any of the following reasons: return to substantial gainful activity; whereabouts becoming unknown; failure to cooperate; other financial factors; or an admitted recovery from disability.

It is the further ORDER, JUDGMENT, and DECREE of the court:

(1) That the plaintiffs' December 28, 1983, motion for preliminary injunction and January 13, 1984, motion for class-wide preliminary injunction, as renewed on August 6, 1984, be and they are hereby granted;

(2) That the defendant's February 2, 1984, motion in opposition to the plaintiffs' request for preliminary injunction be and it is hereby denied;

(3) That defendant Secretary of the Department of Health and Human Services be and she is hereby ENJOINED and RESTRAINED:

(i) From failing to apply the "medical improvement standard" as set forth in *Simpson v. Schweiker*, 691 F.2d 966 (11th Cir.1982), in all pending and future continuing disability reviews in Alabama, until further order of the court; and

(ii) From failing to restore immediately disability benefits under Title II and XVI of the Social Security Act to all members of the plaintiff class, except those members who received "final decisions" from the Secretary before October 29, 1983, and who did not seek judicial review of those decisions in a timely manner; and from failing to continue making payment of benefits to members of the plaintiff class until their cases have been reviewed under the "medical improvement standard";

(4) That the defendant is DIRECTED to file with the court by October 1, 1984, a detailed report of her efforts to comply with this order; and

(5) That the defendant shall provide counsel for the plaintiffs access to files

sufficient to enable them to verify compliance with this order.