**Nellie P. THOMAS, et al., Plaintiffs,**

**State of Alabama, etc., et al., Plaintiff-Intervenors,**

**v.**

**Margaret M. HECKLER, etc., Defendant.**

Civ. A. No. 83–T–826–N.

United States District Court, M.D. Alabama, N.D.

Nov. 16, 1984.

**926**

Lawrence F. Gardella, Legal Services Corp. of Ala., Montgomery, Ala., Joseph E. Carr, IV and Gabrielle Wehl, Legal Services Corp. of Ala., Mobile, Ala., for plaintiffs.

Herndon Inge, III, Inge, McMillan & Inge, Mobile, Ala., for Joseph Thames, Jr., member of Plaintiff Class.

Rosa H. Davis, Russell C. Stoddard, Asst. Attys. Gen., Montgomery, Ala., for plaintiff-intervenors.

John C. Bell, U.S. Atty., Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, Gabriel L. Imperato and Anne Sirota, Dept. of Health & Human Services, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

■ This class-action lawsuit challenging the refusal of defendant Secretary of Health and Human Services to follow this circuit's "medical improvement standard" in terminating Social Security benefits is again before the court on the Secretary's October 15, 1984, motion for relief from judgment, etc., and October 25, 1984, request for stay.[1] The issue presented by the motion and request[2] is whether the newly-enacted Social Security Disability Benefits Reform Act of 1984, P.L. 98–460 (Oct. 9, 1984), requires this court to dissolve its preliminary injunction granting class-wide relief, rescind its schedule for compliance with the injunction and dismiss this lawsuit. For reasons that follow, the court is of the opinion that the Act does not require such steps.

### I.

Plaintiffs Nellie P. Thomas, Mamie Johnson and Robert L. Benford brought this lawsuit on behalf of themselves and others similarly situated in the State of Alabama challenging the refusal of the Secretary to follow the settled law of the United States Court of Appeals for the Eleventh Circuit in terminating payment of benefits under Title II of the Social Security Act, 42 U.S. C.A. §§ 401–435, and Title XVI of the Act, 42 U.S.C.A. §§ 1381–1385. *Thomas v. Heckler*, 598 F.Supp. 492 (M.D.Ala.1984).

In the memorandum opinion issued along with its order of August 15, 1984, this court restated the law of this circuit, as announced in *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir.1982), as follows: "disability benefits [may] not be terminated without substantial evidence of improvement in the recipient's condition." *Thomas v. Heckler*, 598 F.Supp. at 495. The court found that "the Secretary refuses to apply the medical improvement standard except when directed to do so by a federal court in

---

1. In light of the Secretary's October 12, 1984, notice of appeal in this cause, the court has on its own considered whether it has jurisdiction over the instant motion. The court has determined that it has jurisdiction, whether the Secretary's motion properly lies under Fed.R.Civ.P. 60(b), as it purports, *Parrott v. Wilson*, 707 F.2d 1262, 1266–67 n. 8 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 344, 78 L.Ed.2d 311 (1984); *Wilson v. Thompson*, 638 F.2d 799, 803 (5th Cir.1981) (Unit B), or the motion should be taken to lie under Fed.R.Civ.P. 62(c), as a motion to modify an injunction. *Plaquemines Par-ish Community Council v. U.S.*, 416 F.2d 952, 954 (5th Cir.1969); *Hamer v. Campbell*, 358 F.2d 215, 223 (5th Cir.1966).

2. The Secretary's request for a stay seeks only to postpone compliance with the court's August 15, 1984, order, as amended, pending determination of her motion for relief from judgment, etc. The court makes this determination by this order, therefore rendering the request for a stay moot.

a specific case." 598 F.Supp. at 496. The court then concluded that, "in refusing to follow the law of this circuit as announced in *Simpson,* the Secretary has acted and is acting outside the law, flouting both the statutory and constitutional law of this land." 598 F.Supp. at 496–97.

The court further observed "that the Secretary's policy is causing suffering and despair on a mass scale." 598 F.Supp. at 499. The evidence reflected

> that the plaintiffs and members of the class are now unable to pay for medicine, clothing, shelter, food and transportation because of the termination of their benefits. As a result, many have lost or are in danger of losing major possessions, many now suffer from anxiety, depression and a substantial decline in health, and some have even died.

598 F.Supp. at 497.

Based on these and other conclusions of law and findings of fact, the court issued a preliminary injunction on August 15, 1984, requiring, first, that the Secretary apply the *Simpson* standard in all future disability reviews in Alabama and, second, that she correct the effects of her violation by restoring benefits to those Alabama residents improperly terminated until she determines that they are not disabled according to the lawful standard. 598 F.Supp. at 501.

Later, the court met with counsel for the plaintiffs and the Secretary to establish a schedule for the speedy restoration of benefits. The court solicited proposed schedules from all counsel. The plaintiffs submitted a schedule requiring that on November 1, 1984, the Secretary begin notifying plaintiff class members that their benefits would be restored unless they declined or had become ineligible, and that on December 1, 1984, the Secretary begin restoring benefits accordingly. The Secretary failed to submit a proposed schedule. The court therefore issued an order largely adopting the plaintiffs' schedule. The court is now informed that the Secretary has begun complying with this schedule.

## II.

The court has thoroughly reviewed the Social Security Disability Benefits Reform Act of 1984 and its legislative history. The court now considers how this Act affects its prior orders and how the orders should accordingly be redrawn.

The Act's provisions may be summarized as follows. First, the Act establishes a standard by which the Secretary is to review previous disability determinations. Sections 2(a) and (c). This standard is to be applied in all future cases, as well as those now at various stages of administrative and judicial review. Section 2(d). The Secretary is to redetermine the disability of all named members of class actions, such as this one. Section 2(d)(2)(C). She is to redetermine the disability of unnamed members of such class actions, certified before September 19, 1984, if they so request within 120 days of receiving notice from her. Section 2(d)(3). All of those whose cases are to be redetermined may elect to receive benefits pending redetermination, Section 2(e), and, if found still disabled, shall receive full retroactive benefits. Section 2(f). Finally, the Secretary is to apply these provisions of the Act according to regulations which she must promulgate within 180 days of the Act's enactment. Section 2(g).

For its part, the court's August 15, 1984, order, as amended, may be considered as follows. First, the court determined that the Secretary had violated applicable law in terminating disability benefits without substantial evidence of medical improvement. The Act clearly does not address or affect this determination.

Based on this determination, the court ordered two measures of relief. The first of these was that the Secretary apply this circuit's medical improvement standard in ongoing disability reviews in Alabama. At the time, this standard was the applicable law. The Act obviously has changed matters by setting a standard designed to supersede this and other circuits' medical improvement standards. After final submis-

sion in this cause, scheduled for January 11, 1985, the court will appropriately modify its order in this regard.[3]

The second measure of relief the court ordered was the restoration of benefits to class members pending the Secretary's determination that they are not disabled according to the applicable, lawful standard. Although the Act provides a new standard, it does not affect this restoration of benefits, since the restoration is designed to be temporary and limited and to expire upon the Secretary's application of the Act's standard.

The Secretary correctly contends that the Act provides a procedure by which she is to apply the Act's standard to class members; this procedure is generally well-defined and, where undefined, lies within the Secretary's discretion. Therefore, it would certainly be inappropriate for the court to interfere with this procedure. *Heckler v. Day*, — U.S. —, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984). However, the court's order in no way interferes with this procedure or any other application of the Act. To the contrary, the court's order complements and promotes the Act and its procedure.

The court has set forth a procedure for the Secretary to follow until she decides to apply the Act's procedure. According to the court's order, the Secretary is to restore benefits until such time as she undertakes to apply a lawful standard to the plaintiffs' disability, as she so far has not done. The Act now sets this standard. Thus, the Secretary is to provide benefits under the court's order only until such time as she applies the Act.

At that time, by the terms of the Act, the Secretary will give class members the op-portunity to elect to receive benefits pending redetermination, Section 2(e), making the court's order beside the point. Obviously, if and when a class member decides not to undergo redetermination, such as by failing to request it within 120 days from receiving notice, Section 2(d)(3), the court's order will no longer apply.

The court's temporary restoration of benefits pending application of the Act is justified on several grounds, discussed in the court's prior opinion and recognized in the legislative history of the Act. First, it is based on the court's finding that the Secretary violated the law. Congress repeatedly acknowledged this fact, as this example shows:

> ... the disability review process was being conducted in a manner contrary to the intent of Congress, in defiance of court mandates and without any regard for the pain and hardship that was being placed upon the disability recipient.

130 CONG.REC. S11469 (daily ed. September 19, 1984) (remarks of Sen. Pell).

As Congress recognized, such unlawful conduct compels a remedy. The Act is this remedy, and the court's order is a means to prevent further hardship until Congress' remedy takes effect. The existence of hardship cannot be denied. "Obviously, some people were removed from the rolls who should not have been." 130 CONG. REC. S11453 (daily ed. September 19, 1984) (remarks of Sen. Dole).

Though Congress did give the Secretary discretion to apply the Act, its conferees also expressed an expectation that the Secretary would "act expeditiously." Joint Explanatory Statement of the Committee of Conference. Even so, "the conferees recognize that there will be considerable

---

**3.** As of yet, the parties have not specifically requested that the court modify this aspect of its order. There is no great need for haste since "it is still not entirely clear how the [Act's] medical improvement standard will be implemented."

130 CONG.REC. H9837 (daily ed. September 19, 1984) (remarks of Rep. Gradison). The Secretary presumably is now in the process of devising regulations for such implementation.

administrative difficulty in identifying and notifying individuals who are eligible to have their cases redetermined...." *Id.* In addition, the Secretary has until late April or early May 1985 to promulgate regulations. Section 2(g). Without doubt, while the Secretary is interpreting the Act and prescribing regulations by which to apply it, disability benefits recipients, including class members here, will suffer ongoing and extreme hardship, contrary to the purpose of the Act, unless the court's order of restored benefits remains in effect. Once the Secretary applies the Act, its provisions will alleviate the hardship, as Congress intended.

The court's order is thus consistent with the balance Congress struck between avoiding further hardship and allowing the Secretary ample time to respond. The Secretary retains control over this balance. If she begins applying the Act tomorrow, the court's order will thereupon cease to bind her.[4] It remains wholly for the Secretary to decide when to apply the Act. Her discretion is unabridged.

### III.

The Secretary appears to take particular exception to the schedule the court has set for the restoration of benefits. The basis for her exception seems to be somewhat of a speculative afterthought. The Secretary has not objected to the court's order for several months and in fact has begun to follow the schedule. There is therefore no reason to interrupt this compliance, since again the court's order is inherently temporary and limited, subject to abrogation by the Secretary's own steps in applying the Act.

The court's schedule in no way replaces or alters the Act's procedure described above for redetermination of disability. By its own terms, the schedule concerns events that precede application of the Act. This is a schedule for restoring benefits pending application of the Act. It does not concern the Secretary's redetermination of disability, nor her notification to unnamed class members of the opportunity to redetermination. Once the Secretary undertakes these steps and class members respond or fail to respond within the set period, the schedule will be without force or effect. Thus, the Secretary's discretion to take these steps is in no way infringed.

That the court's schedule imposes little if any burden on the Secretary has been evident from her regard toward it. The Secretary first had notice of the court's order to restore benefits on August 15, 1984. According to the order, restoration was to be immediate. Nevertheless, the court provided all parties several opportunities over a two-month period to propose a schedule for compliance and thereby to account for any burdens that the order presented. The Secretary actively participated in these discussions through the office of her general counsel. She did not propose an alternative schedule to the plaintiffs', and the only burden she mentioned was the difficulty of compiling a list of the plaintiff class members. The Secretary now appears to have resolved this difficulty, since she has begun sending notices to class members in accordance with the court's schedule. Only on October 25, 1984, by the instant request for stay, did the Secretary suggest that any other burden might result from the court's schedule.

---

**4.** In this regard, the court would note that it and other courts in this district have already begun to remand to the Secretary the individual cases of unnamed plaintiff class members, according to Section 2(d)(3) of the Act. To the extent that further steps to satisfy this provision may be appropriate, the court will consider them at final submission. As this opinion indicates, the court considers the Secretary free to apply the Act to all the plaintiff class members at any time.

Based on this evidence and in due deference to the Secretary, the court finds that the Secretary's concerns regarding the court's schedule are not warranted. There is nothing to be gained and much to be lost from interrupting the schedule at this late stage.

In this regard, the schedule is not an "unwarranted judicial intrusion into [a] pervasively regulated area ... with respect to future disability claims ..." *Heckler v. Day,* — U.S. ——, 104 S.Ct. 2249, 2258, 81 L.Ed.2d 88 (1984). Rather, the court has simply established temporary, limited measures for the transition from the Secretary's past unlawful conduct to her impending lawful application of the Act.[5]

On this basis, an appropriate order will be entered.

---

**5.** In the recent case of *Heckler v. Kuehner,* — U.S. ——, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984), *vacating,* 717 F.2d 813 (3rd Cir.1983), the Supreme Court instructed the Third Circuit Court of Appeals and the United States District Court for the Eastern District of Pennsylvania to "make any necessary clarifications in the definition and scope of the class ... and ... take other actions appropriate in light of that Act." *Id.* Such are the actions that this court has taken here.