Victor L. EDWARDS, Plaintiff,

v.

Margaret HECKLER, Secretary of
Health and Human Services,
Defendant.

Civ. A. No. CA–7–83–30.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Oct. 17, 1983.

Mark Heller, West Texas Legal Services, Wichita Falls, Tex., for plaintiff.

Mattie Peterson Compton, Fort Worth, Tex., for defendant.

## MEMORANDUM AND ORDER

MARY LOU ROBINSON, District Judge.

In 1976, Victor Edwards was found to have been disabled within the meaning of the Social Security Act since April 16, 1975. He received Social Security disability benefits until the Secretary determined that his disability had ended in December of 1981. He received a *de novo* hearing before an Administrative Law Judge, see 42 U.S.C. § 405(b) (1976 ed. Supp. V); § 421(d); 20 CFR §§ 404.929–.930 (1981), who found, in relevant part, that:

¶ 4. The claimant's medically determinable impairments are: neuropathy, right lower extremity, secondary to removal of herniated disc; history of peptic ulcer; hiatus hernia; adult onset diabetes mellitus; chronic obstructive pulmonary disease; and obesity.

¶ 5. The medical evidence shoes [sic] that beginning December 1981, the claimant's impairments improved.

. . . . .

¶ 12. By [D]ecember 1981, the claimant was no longer under a "disability" as defined in the Social Security Act, as amended.

The Social Security Appeals Council concluded that there was no basis under 20 CFR § 404.970 (1983) for granting Claimant's request for a review of these findings and, accordingly, denied his request for a review. The ALJ's findings thus became final. 20 CFR § 404.981 (1983). Claimant has appealed to this Court. 42 U.S.C. § 405(b); 20 CFR § 422.210 (1983).

### Scope of Review

■ The jurisdiction of this Court is confined to a limited review of the Secretary's decision and the record made in the administrative hearing process. 42 U.S.C. § 405(g). This Court reviews whether the decision of the Secretary is in fact supported by substantial evidence and whether errors of law occurred. *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983). "We may determine only whether there is substantial evidence on the entire record to support the Secretary's fact findings. We may not reweigh the evidence, substitute our own judgment for the Secretary's, or give vent to feelings of compassion. While we need not be hard hearted, we must be cool tempered: if the Secretary's findings are supported by substantial evidence, they are conclusive." *Bowman v. Heckler,* 706 F.2d 564, 566–67 (5th Cir.1983). *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Thomas v. Schweiker,* 666 F.2d 999, 1001–02 (5th Cir.1982) (per curiam); *Salinas v. Schweiker,* 662 F.2d 345, 347 (5th Cir.1981) (per curiam).

■ Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Chaney v. Califano,* 588 F.2d 958, 959 (5th Cir.1979). It is more than a scintilla, but less than a preponderance, and must be based on the record as a whole. *Knott v. Califano,* 559 F.2d 279 (5th Cir.1977). To make a finding of "no substantial evidence", this Court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983), *quoting Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir.1973).

### Criteria for Disability

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted ... for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be appropriately demonstrated. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

> [A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. For purposes of the preceding sentence ..., "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

### Who Must Show What

■ "In a case in which benefits have been terminated, as in a case in which benefits have been denied, the burden of proving disability is on the claimant, not on the Secretary.... Thus the claimant has the burden of proving that his disability did in fact, continue." *Crosby v. Schweiker,* 650 F.2d 777, 778 (5th Cir.1981), *quoting Myers v. Richardson,* 471 F.2d 1265, 1268 (6th Cir.1972) (citations omitted). The claimant has the benefit of a presumption that his prior medical condition has continued unchanged because "[o]nce evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained un-

changed." *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973). This suggests that in a termination hearing the Secretary must present some proof of change in a medical condition previously determined to be disabling. The Ninth Circuit has held that:

> In an appropriate case ... a prior ruling of disability can give rise to a presumption that the disability still exists. [*Rivas*] ... We are unable to discern any reason why the familiar principle that a condition, once proved to exist, should not be applied when disability benefits are at stake.... All the presumption does is impose on the Secretary a burden to come forward with evidence that [the claimant's] condition has changed. Whether that burden has been met is a judgment to be made initially by the Secretary, and that judgment cannot be overturned on appeal if it meets the "substantial evidence" standard.... But where ... there is essentially no evidence to support a conclusion that the claimant's condition has changed, the substantial evidence standard has not been met.

*Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982). *Accord Musgrove v. Schweiker,* 552 F.Supp. 104, 106–07 (E.D. Pa.1982). *See Heckler v. Lopez,* —— U.S. ——, ——, 104 S.Ct. 10, 12, 77 L.Ed.2d 1431 (1983) (Rehnquist, Circuit Justice) ("[F]our Justices of this Court would not be likely to grant a petition for certiorari should the Secretary seek review in this Court of the merits of a Ninth Circuit opinion reaffirming Patti and [*Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981)].").

Judge Garza, sitting in the Eleventh Circuit by designation, recently wrote:

> In reviewing the appeal of an initial disability benefits case, we consider whether the Secretary's finding of no disability is supported by substantial evidence. However, in light of principles of administrative res judicata, this is not the proper inquiry in a benefits continuation case. We must ascertain whether the Secretary's finding of *improvement* to the

point of no disability is supported by substantial evidence. In each case, the burden remains with the claimant to prove the existence of a disability. [*Crosby*] If, however, the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. Otherwise, termination of benefits will often depend not on a finding of changed condition, but simply on the whim of a changed ALJ.

*Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir.1982).

A termination case based on improvement requires the Secretary to make two distinct findings: (1) that the claimant's condition has improved, and (2) that the claimant's improved condition is not disabling within the meaning of the Social Security Act. Each of these findings must be supported by substantial evidence in the record. The Secretary bears the initial burden of going forward with the evidence. She must place substantial evidence in the record that the claimant's condition has improved or else termination will be barred by res judicata. Once evidence of improvement is in the record, the claimant must produce evidence and persuade the trier of fact that he remains disabled despite his improved condition.

This is consistent with *Rivas, Crosby,* and *Simpson. Rivas* teaches that there is a presumption of unchanged medical condition and, in conjunction with *Crosby,* that this presumption imposes on the Secretary the burden of going forward with evidence without shifting the burden of proof from the claimant to the Secretary. *See* Fed.R. Evid. 301. *Simpson* makes clear that the continuation of benefits mandated by the Secretary's failure to rebut the presumption of unchanged medical condition by introducing substantial evidence of improvement is a consequence of administrative res judicata, not an independent presumption of continuing disability.

### Has Claimant's Condition Improved?

Claimant was injured on April 16, 1975, when he was pulled into a conveyer belt. Tr. at 10. He experienced severe pain in his back and right leg. Tr. at 97–98. After conservative treatment failed to remedy this condition he underwent surgery on August 27, 1975. This surgery, a discectomy for a herniated nucleus pulposus, resulted in further injury to his spinal cord when the sacral nerves were drilled into as a result of undiscovered spina bifida. Surgery was terminated before the L–5 nerve root was completely decompressed. The L–5 root remained smaller than normal as a result of the compression. Tr. at 116–117.

On his Social Security disability benefits application, Claimant alleged that his back had been injured, the toes on his right foot were turning under, his right side was numb, he had difficulty walking up steps, and the muscles in his buttocks were degenerating. Tr. at 88. He also alleged pain in the back, numbness in the right buttock, hip, thigh and foot and complained of loss of balance. Tr. at 90. He could not sit, stand or lay down for any length of time and had to constantly change positions. Tr. at 97–98.

On March 17, 1976, the Social Security Administration found Claimant disabled because of a herniated nucleus pulposus, spina bifida occulta, and neuropathy following surgery. Tr. at 72. A series of medical reports subsequent to this determination appear in the record.

In October, 1979, Claimant was admitted to Shannon West Texas Memorial Hospital and Dr. Landy diagnosed him as suffering from a hiatus hernia, peptic inflammatory disease, obesity, moderate chronic bronchitis and emphysema, and nerve damage and weakness of the right leg with atrophy of the right foot and the right calf. Tr. at 133–136. He was discharged "improved only slightly." Tr. at 134.

In November, 1981, Dr. Bray of the Bone & Joint Clinic examined Claimant and found weakness in his right leg, pain in his back, limited flexion at the waist, atrophy

of the right calf, decreased sensation in the medial thigh and around the buttocks on the right side, narrowing and sclerosis of the L–5, S–1 interspace with spina bifida occulta, and significant damage to the L–5 and S–1 to –4 nerve roots. He stated that "[i]t is likely that improvement is poor." Tr. at 146.

In August, 1982, Dr. Robison of the Wichita Falls Clinic, one of Claimant's treating physicians, assessed him as having chronic pain following the L–4 laminectomy, chronic bronchitis, chronic obstructive pulmonary disease, obesity, adult onset diabetes mellitus, peripheral sensory neuropathy, and a history of peptic ulcer disease. Tr. at 156.

In September, 1982, Dr. Pino of the Wichita Falls Clinic, another of Claimant's treating physicians, stated that Claimant "has a permanent damage to his L5 nerve root on the right, which has been following along since 1975, without any improvement. The patient has continued functional impairment of his right lower extremity with pain radiating along the L5 nerve root on the corresponding extremity.... He has chronic pain ... which has not been totally eradicated with the present treatment." Tr. at 161.

In January, 1983, Dr. Farmer, a neurologist with the Wichita Falls Clinic, examined Claimant and found that "[h]e does appear to be having bona fide nerve root irritation and I do feel that his complaints of inability to sit or stand for prolonged periods of time are consistent with his examination." Tr. at 10.

Finally, we turn to the only remaining physician's report in the record, that of Dr. Carsner from November, 1981. On physical examination he found: "Straight leg rise is positive at 20° on the right, positive at 35° on the left. Patrick's maneuver carried out without difficulty. Patient is able to bend to 50° and squats with little difficulty. The patient is unable to walk on his heels or toes due to apparent weakness of the right foot.... The right calf is slightly smaller than the left.... The patient cannot extend the toes of his right

foot.... Deep tendon reflexes absent at the right ankle." Tr. at 148. He later stated that he thinks Claimant "does have some neuropathy." Tr. at 149. The ALJ relied heavily on this report, stating that:

> [A] medical report by Dr. Robert L. Carsner ... best reflects claimant's condition in connection with his present impairments. [The report] states:
>
>> I think this patient does have chronic obstructive pulmonary disease, mild to moderate, and this would certainly be helped by discontinuing all smoking and perhaps the use of bronchodilators, as well as expectorants. He does have history of nerve injury secondary to surgery in the past, and I think he does have some neuropathy secondary to this, but this does not appear to be disabling at the present time. I think he would be limited in his ability to carry out heavy physical work with weight lifting, pushing, pulling; this to include anything over twenty-five pounds. He would also have difficulty bending. I think he very likely does have peptic disease with perhaps esophagitis and this should be helped with the use of antacids as well as Tagamet. This again would be helped by discontinuing his smoking. He is not hypertensive at the present time and there is no evidence of hypertensive cardiovascular disease nor end organ damage secondary to hypertension. I think if he were able to discontinue smoking, prognosis for improvement in regards to primary symptoms would be good. The claimant's primary complaint is pain in his back, tail bone, right hip, and right leg. The medical evidence does show that he has a peripheral sensory neuropathy, which may be due to his diabetes. It is felt that all of his conditions would improve if claimant would quit smoking and follow a weight reduction program.

■ Although Claimant is an obese chain-smoking ex-alcoholic who suffers from a variety of remediable maladies, his initial disability determination was based

on only three items: a herniated nucleus pulposus, spina bifida occulta, and neuropathy following surgery. Tr. at 72. There is no substantial evidence in the record that any of these three conditions have improved. Certainly nothing suggests that his herniated nucleus pulposus or his spina bifida occulta have been cured or improved. Dr. Carsner does state that his neuropathy "does not appear to be disabling at the present time." Tr. at 149. This does not constitute substantial evidence.

A conclusory statement of disability is, of course, not binding on the Secretary. 20 CFR § 404.1527 (1982). The weight to be given a physician's conclusory statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence on the severity and probable duration of the individual's impairments. *Id.; Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir.1983). Here, Claimant's initial impairments were documented with an electromyogram, a myelogram and a discogram. Tr. at 110–119. No such objective medical findings support Dr. Carsner's statement and no comparison between Dr. Carsner's examination results and Claimant's initial condition of disability has been made to demonstrate how Claimant's condition is improved.

### Conclusion

After giving due consideration to the Motions for Summary Judgment filed by each side, and the briefs, pleadings and transcript of the Social Security Administration proceedings filed herein, the Court is of the opinion that Defendant's Motion for Summary Judgment should be and hereby is DENIED and that Plaintiff's Motion for Summary Judgment should be and hereby is GRANTED.

It is so ORDERED.