Allen **BLUMBERG**, Plaintiff,

v.

Margaret M. **HECKLER**, Defendant.

No. 82–6674–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 5, 1984.

Lyle D. Lieberman, Miami, Fla., for plaintiff.

Maria P. Sperando, Asst. U.S. Atty., Miami, Fla., for defendant.

## FINAL ORDER

HASTINGS, District Judge.

Upon review of the Report and Recommendation of United States Magistrate Herbert S. Shapiro, and upon independent review of pertinent parts of the entire record herein, it is hereby

ORDERED AND ADJUDGED that said Report and Recommendation is hereby adopted, and that the Decision of the Secretary of Health and Human Services be REVERSED.

## REPORT AND RECOMMENDATION
### September 17, 1984

HERBERT S. SHAPIRO, United States Magistrate.

This is a review of the final decision of the Secretary of Health and Human Services of the United States of America, who has denied Allen Blumberg disability and disability insurance benefits under the provisions of 42 U.S.C. Sections 416(i) and 423.

The Honorable Alcee L. Hastings, United States District Judge, has referred this cause to United States Magistrate Herbert S. Shapiro for preliminary review of the administrative record and preparation of a recommended decision as to whether the record contains substantial evidence to support the administrative decision. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

### I. RECORD

For the purposes of this Report and Recommendation, the letter "R" will be used to designate the Record.

### ISSUE PRESENTED

The issue to be determined by this Court is whether the ALJ's finding of no disability is supported by substantial evidence.

### APPLICABLE LAW

A. *Statutory*

Certain basic statutory provisions relating to disability and mental impairment are applicable in this case.

First, 42 U.S.C. Section 423(d)(1)(A) defines "disability" as:

... inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than 12 months....

Pursuant to 42 U.S.C. Section 423(d)(2)(A), a disability exists where:

an individual (except a widow, surviving divorced wife, or widower for purposes of section 402(e) or (f) of this title) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Further, 42 U.S.C. Section 423(d)(3) provides:

For purpose of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques.

Title 42 U.S.C. Section 423(d)(5) (Supp.1983) has specified that:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

On November 28, 1978, the Secretary's vocational factors regulations were published as formal rules in the Federal Register. 20 C.F.R. Sections 404.1503–404.1513; Sections 416.903–416.913. Former Sections 404.1503–404.1513 were redesignated as Sections 404.1514–404.1518, and former Sections 416.903–416.913 were redesignated as 416.914–416.918. The new regulations became effective February 26, 1979. The new regulations were utilized in the instant case and set forth the factors which were considered in this action.

Pursuant to the new regulations, a sequential process of evaluation is to be undertaken in assessing a disability claim. 20 C.F.R. Section 404.1520(a). First, it must be determined whether the claimant is presently engaged in substantial gainful activity. If so, then a finding of no disability is made. 20 C.F.R. Section 404.1520(b). If not, then the next inquiry is whether the claimant suffers from a "severe" impairment which significantly affects basic work related activities. 20 C.F.R. Section 404.-1520(b); *see also* Section 404.1521. If so, the inquiry progresses. If not, then, without considering age, education or work experience, the claimant is determined not to be disabled. 20 C.F.R. Section 404.1520(c).

Where a severe impairment does exist, the next step is to determine if it meets or equals the Secretary's Listing of Impairments in Appendix I, Subpart P of the regulations. Disability is automatically established if the listing is met. 20 C.F.R. Section 404.1520(d). If the listing is not met, then the individual's Residual Functional Capacity (RFC) must be determined. This means that the Secretary must determine those physical and mental functions which the claimant can still perform despite his or her impairments. 20 C.F.R. Section 404.1544. These must be measured against the demands of claimant's prior work to determine whether he or she can return to that work. If not, then the Secretary must determine if there is any other work existing in the economy which the claimant can do, considering age, education, work experience and RFC. 20 C.F.R. Section 404.-1520(e) and (f). If, however, the claimant can return to past work, disability is denied.

**B.** *Case Law*

I

◼ The undersigned notes that cases decided by the Fifth Circuit before the close of business on September 30, 1981, are binding on this Court as precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

II

The law is clearly settled as to the role of this Court in reviewing the denial of Social Security Disability Benefits. The Social Security Act provides for a limited measure of judicial review. "The role of the Courts in this quintessentially administrative process is extremely narrow." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir.1975); 42 U.S.C. Section 405. *See Homan & Crimen v. Harris,* 626 F.2d 1201 (5th Cir.1980). As the Fifth Circuit said in the *Lewis* case, 515 F.2d at 586, 587:

> We do not re-weigh the evidence; we simply determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1970) ... [D]eterminations which are not supported by substantial evidence are unusual, even rare ... *Gaultney v. Weinberger,* 505 F.2d 943, 945 (5th Cir.1974). Nonetheless, this does not mean that "we have abdicated our traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of the decision reached."

*See Rodriguez v. Schweiker,* 640 F.2d 682 (5th Cir.1981); *see also Bloodsworth v. Heckler,* 703 F.2d 1233 (11th Cir.1983). The Court is barred from substituting its evaluation of the evidence for that of the Secretary, yet it may review the record to determine if substantial evidence exists to support the Secretary's findings. *Boyd v. Heckler,* 704 F.2d 1207 (11th Cir.1983);

**1254**

*Viehman v. Schweiker,* 679 F.2d 223 (11th Cir.1982). The Court is to defer to the Secretary's findings of fact. *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982); *Millet v. Schweiker,* 662 F.2d 1199 (5th Cir.1981). Issues of credibility are reserved to the Secretary of Health and Human Services. *Smallwood v. Schweiker,* 681 F.2d 1349 (11th Cir.1982).

 Thus, under the Eleventh Circuit's directive, this Court clearly may review the Secretary's denial and may utilize the entire record of the proceedings in making its final determination. *See Viehman v. Schweiker,* 679 F.2d 223 (11th Cir.1982).

### III

The issue before the Court is whether the finding of no disability of the Secretary, as reflected by the record, is supported by substantial evidence. *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982).

The function of this Court is not to determine the claim of the plaintiff *de novo* but rather to determine whether the findings of the Secretary as to any fact are supported by substantial evidence. 42 U.S.C. Section 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970); *Jones v. Heckler,* 702 F.2d 950 (11th Cir. 1983); *Walden v. Schweiker,* 672 F.2d 835 (11th Cir.1982); *Rodriguez v. Schweiker,* 640 F.2d 682, 685 (5th Cir.1981). "Substantial evidence" is defined as relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Boyd v. Heckler,* 704 F.2d at 1205; *Freeman v. Schweiker,* 681 F.2d 727, 730 (11th Cir.1982).

### IV

 The burden of proof on plaintiff is a heavy one. *Oldham v. Schweiker,* 660 F.2d 1078 (5th Cir. Unit B 1981). To become eligible for disability benefits, the plaintiff is *required* to prove by objective medically acceptable clinical and laboratory diagnostic findings that he is unable to work owing to a physical or mental impairment. *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973), *cert. den.,* 414 U.S. 913,

94 S.Ct. 255, 38 L.Ed.2d 155 (1973); *Hart v. Finch,* 440 F.2d 1340 (5th Cir.1971). An ALJ's challenge to the credibility of the claimant is proper where the evidence is subjective. *Smallwood v. Schweiker,* 681 F.2d at 1351. Under both statutory and case law, the burden is on the plaintiff to prove his disability supported by medical evidence. *Simpson v. Schweiker,* 691 F.2d at 969; *Anderson v. Schweiker,* 651 F.2d 306 (5th Cir.1981); *Crosby v. Schweiker,* 650 F.2d 777 (5th Cir.1981); *Ferguson v. Schweiker,* 641 F.2d 243 (5th Cir.1981). If the plaintiff shows that a return to the prior job is not possible, the burden shifts to the defendant to show that the plaintiff is qualified to perform other work available in the national economy. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Howell v. Schweiker,* 699 F.2d 524 (11th Cir.1983); *Walden v. Schweiker,* 672 F.2d 835 (11th Cir.1982). If the Secretary shows other employment of which plaintiff is capable, the plaintiff must be allowed an opportunity to show inability to perform those jobs. *Millet v. Schweiker,* 662 F.2d 1199 (5th Cir.1981).

### V

 The law provides that pain may constitute a disability if it is not remediable or is sufficiently severe to preclude substantial gainful activity. *Scharlow v. Schweiker,* 665 F.2d 645 (5th Cir.1981); *Ware v. Schweiker,* 651 F.2d 408 (5th Cir.1981), *cert. den.,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982); *Laffoon v. Califano,* 558 F.2d 253 (5th Cir.1977); *Gaultney v. Weinberger,* 505 F.2d 943 (5th Cir.1974). Pain can be held disabling even where there is no supporting objective medical evidence if the pain can be linked to a medically determinable impairment. *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir. 1982). However, the Fifth Circuit has noted:

the inability to work without incurring some pain or discomfort is not necessarily disability... Therefore, the question of how much pain is disabling is for the Administrative Law Judge, whose task it

is to resolve conflict in the evidence. (Citations omitted)

*Gaultney v. Weinberger*, 505 F.2d at 946; *see also Benson v. Schweiker*, 652 F.2d 406 (5th Cir.1981); *Ware v. Schweiker*, 651 F.2d at 412.

## EVIDENCE

■ Four factors must be considered in determining the merits of a claim for disability benefits:

1. Objective medical facts or clinical findings;
2. Diagnoses of examining physicians;
3. Subjective evidence of pain and disability as testified to by the claimant and corroborated by other witnesses; and
4. Claimant's age, education, and work history.

*Walden v. Schweiker*, 672 F.2d at 839. *See also Freeman v. Schweiker*, 681 F.2d at 730 (education and mental capacity must be considered).

## VI

The record in this case reveals that the plaintiff, at the time of application for benefits, was a fifty-eight (58) year old former insurance broker who alleges that he stopped working on October 9, 1981 due to a cardiovascular condition (R–51). A Disability Determination and Transmittal Report dated January 13, 1982, diagnosed the plaintiff as suffering from "hypertension without evidence of end-organ damage". R–55). The Disability Determination Rationale states in pertinent part (R–56):

> You state your are unable to work because of a variety of health problems such as hypertension, chest pain and shortness of breath. Although you may have had problems with your blood pressure, it has not seriously damaged any vital body organs and does not prevent you from doing your usual activities. You may feel short of breath at times, however, X-ray studies and your medical records do not show serious lung problems. Although you may have pains in your chest from time to time, special testing shows satisfactory heart function for your usual activities. You should be able to lift 20 pounds occasionally to 10 pounds frequently. The other problems you mentioned do not limit your daily activities. Based on your description of the job you performed for 14 years, insurance broker, we have concluded that you have the ability to return to this job.

The Disability Determination Rationale further indicated that the severity of the claimant's impairment does not meet or equal that of any impairment described in the Listing of Impairments. A denial of benefits was issued based on the plaintiff's ability to return to prior relevant work. (R. 56). The plaintiff filed a Request for Reconsideration on January 18, 1982 (R. 59), and the denial of benefits was affirmed on January 28, 1982 (R. 61, 62). On February 2, 1982, the plaintiff filed a Request for Hearing (R. 21). The case was heard by Administrative Law Judge James G. Henry (hereinafter referred to as ALJ) in Fort Lauderdale, Florida on April 21, 1982. (R. 22–50). On May 7, 1982, the ALJ decided that based upon plaintiff's application filed on November 3, 1981, he was not entitled to a period of disability or to disability insurance benefits under Sections 216(i), and 223, respectively, of the Social Security Act, as amended (R. 18).

The ALJ made the following findings, quoted herein verbatim (R. 17–18):

1. The claimant met the special earnings requirements of the Social Security Act on October 9, 1981, the alleged onset date, and continues to meet that requirement through the date of this decision.

2. Claimant has a mild to moderate cardiovascular problem, an abnormal treadmill stress test, but no severe angina pectoris.

3. Claimant's allegations of constant or severe chest pains are clearly not supported by the evidence of record, the claimant's own testimony, or the Administrative Law Judge's observa-

tions at the hearing, and are not credible to the degree alleged.

4. The claimant has the residual functional capacity to perform work-related functions of at least sedentary work. He should not lift over 20 pounds.

5. Claimant's past relevant work as an insurance brokerage firm manager did not require the above limitations.

6. Claimant's impairments do not prevent the performance of this past relevant work.

7. In accordance with Regulation 404.-1520(e), the claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time on or before the date of this decision.

The ALJ's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council concluded that there was no basis for the plaintiff's request for review. (R. 2) From that decision, the plaintiff now appeals.

The plaintiff has exhausted the administrative process and seeks judicial review under 42 U.S.C. Section 405(g).

## VII

The plaintiff seeks disability insurance benefits on the basis that he has been unable to engage in any substantial gainful activity because of his stress related angina pectoris condition.[1]

### A. Plaintiff's Age, Education and Work History

The plaintiff was born on October 23, 1923, and was fifty-eight (58) years old at the time of the hearing. He has a twelfth grade education. (R. 33). The plaintiff testified that he had worked in insurance sales management for 25 years.

### B. Subjective Evidence of Pain and Disability

The plaintiff, who appeared at the hearing *pro se*, testified that he stopped work on or about October 9, 1981, as a result of a "tremendous amount of anxiety and pain". (R. 34). He stated that he suffers from hypertension, high blood pressure, chest pain and shortness of breath from his cardiovascular condition. He states that he suffers from angina (R. 28, 29). He stated: "The type of pain that I was suffering was not normal chest pains but pains like I was carrying another person on my back, piggyback and I would find that I can only get rid of this through proper rest.[2] (R. 34). The plaintiff further stated that he has distress after eating, and takes "nitro" after each meal (R. 35). He has problems walking especially after meals. He stated that walking one or two blocks caused pain and shortness of breath. He has no problems sitting and standing, however, bending caused shortness of breath (R. 38). He stated that he did no lifting except for his briefcase. He takes care of his personal needs. The plaintiff often worked ten hours a day when he performed substantial gainful work activity. After October, 1981, he stated that he could not call on his

---

1. Angina pectoris is a clinical syndrome resulting from transient myocardial ischemia. The typical patient is in his fifties or early sixties and seeks medical advice because of chest discomfort. The patient commonly declines to apply the word *pain* to his chest symptoms, may have difficulty describing the sensation, and will usually select words such as heaviness, pressure, smothering, tightness, choking or squeezing. The typical discomfort is substantial in location, but other sites are also commonly involved, such as *pain in the back, shoulder,* neck, jaw, throat, abdomen or arm, with no symptoms in the chest. (emphasis supplied.) The most important diagnostic feature of angina pectoris is its relation to *exertion or emotion,* and its relief by rest. The discomfort comes on during physical or emotional stress, anger, fright, hurrying or sexual activity. (emphasis supplied). *See Harrison's Principles of Internal Medicine,* Tenth Edition, Chapter 260. "Ischemic Heart Disease", p. 1425–1426.

2. It is noted that pain in the back and shoulders is a commonly involved location of discomfort for angina pectoris, the clinical syndrome resulting from transient myocardial ischemia. *See Harrison's Principles of Internal Medicine,* Tenth Edition, Chapter 260. "Ischemic Heart Disease" p. 1425–1426.

clients in a satisfactory manner due to anxiety, which causes his distress. (R. 39–40).

The plaintiff continues to receive residual renewal commissions from his his prior insurance sales work, but he no longer performs substantial gainful activity. (R. 40–45). The plaintiff has a personal disability insurance policy which began paying benefits in November, 1981 (R. 36–37).

The plaintiff moved from New York to Florida in November, 1981. (R. 45). His general practitioner in New York is Dr. Alvin Hershfeld, who initially administered cardiograms and blood pressure readings. (R. 36). His treating cardiologist is Dr. Philip Gelber. The plaintiff has been under his care for his alleged angina condition since 1979. The plaintiff testified that he stopped working on his doctor's instructions. (R. 49).

C. *Diagnoses of Examining Physicians/Review of the Medical Records*

In a letter dated May 23, 1979, (R. 102) the plaintiff's cardiologist and treating physician, Dr. Philip M. Gelber, indicated that plaintiff was seen in his office on May 18, 1979, for exercise stress testing. A twelve lead resting electrocardiogram demonstrated normal sinus rhythm with right bundle branch block. The letter indicated that the plaintiff underwent treadmill testing using the Bruce protocol. The patient achieved a heart rate of 145 beats per minute at 2.4 miles per hour up a 12° inclination. This was 85% of his predicted maximal for age. Dr. Gelber indicated that at this point, the plaintiff experienced mild bilateral area discomfort. Blood pressure response to exercise was normal, and there were no ST or T wave abnormalities or arrhytmias. It was then Dr. Gelber's opinion that the plaintiff had a clinical history strongly suspicious for angina pectoris, however, the patient had a negative treadmill examination. (R. 101–102). Dr. Gelber stated further that "An exercise stress test was negative. However, in view of the conduction distur-

bance involving right bundle branch block, it is possible that a small ischemic response could have been masked by the conduction disturbances. Treatment in this particular case should be directed at symptoms. Should the patient continue to experience symptoms with exertion, a trial of medical therapy to include Inderal and Isordil should be considered." (R. 102).

A letter dated February 13, 1981 (R. 101) indicated that the plaintiff was examined again by Dr. Gelber on February 3, 1981. The plaintiff underwent treadmill testing using the Bruce protocol. He achieved a heart rate of 150 beats per minute, which was in excess of 85% of the predicted maximal for his age. The heart rate and blood pressure responses to exercise were normal. At the termination of the protocol, 2 mm. horizontal ST segment depression was noted in lead U2 which was painless. These ST segment abnormalities persisted for approximately four minutes after the termination of the exercise. It was Dr. Gelber's opinion that the plaintiff demonstrated a positive treadmill test approximately two years subsequent to a previous negative test. The plaintiff was seen again by Dr. Gelber on June 9, 1981. (R. 1001). In a letter written to plaintiff's general practitioner, Dr. Gelber reported that the plaintiff was examined at his own request for evaluation of his angina pectoris. The plaintiff reported approximately three-to-four episodes of chest discomfort per week.

The letter revealed that Dr. Gelber had an extensive discussion with Mr. Blumberg concerning the advisability or inadvisability of coronarteriography. Dr. Gelber increased the plaintiff's medication to 60 mg. of Corgard [3] by mouth every morning, and Isosorbide Dinitrate [4] 2.5 mg. sublingually, four times a day.

In a letter dated October 3, 1981 (R. 99) to the plaintiff, Dr. Gelber indicated that the plaintiff had been under his care at the request of Dr. Alvin Hershfeld for approxi-

---

**3.** Corgard (Nadolol) is used for the management of both angina pectoris and hypertension.

**4.** Isosorbide Dinitrate is a nitrate used in the treatment of angina pectoris (pain of coronary artery disease).

mately one year. During this interval, the plaintiff was treated for angina pectoris with Nadolol. Dr. Gelber stated that although the response to treatment had been fair, he recommended that he continue to limit his working activities. (R. 99).

On December 4, 1981, the plaintiff's treating cardiologist, Dr. Gelber, received a standard form from the Department of Health and Rehabilitative Services, Office of Disability Determinations. The letter stated: "By law, we need a complete description of chest pain of cardiac orgin to be able to determine eligibility for disability benefits. We will appreciate your response to the below form." Dr. Gelber reported that the plaintiff does have chest pain of cardiac origin located in the midsternal area. The pain is characterized as pressing, and does not radiate. It is brought on by effort and relieved by rest (R. 108). The undersigned notes that the form did not request objective medical evidence to substantiate answers given.

On December 31, 1981, Dr. Joel Rapchik, an internist, gave the plaintiff a consultative examination. He reported that the plaintiff gave a four-year history of hypertension, and a two-year history of chest pain and shortness of breath, with a positive treadmill stress test performed by Dr. Philip M. Gelber. The plaintiff's family history reveals that his mother died at age 57 of heart disease, and his father died at age 89 of the same.

Dr. Rapchik found that EKG showed left anterior hemiblock and complete right bundle branch block. A physical examination revealed that the plaintiff was 71½ inches tall, and weighed 215 pounds. His pulse rate was 80 and regular, while respirations measured 20 and unlabored. His blood pressure read 120/90 in his right arm, and 130/100 in his left arm. There was a thoracotomy scar at the right posterior chest wall. There were no murmurs, gallops or rubs in his heart. The plaintiff described his chest pain to Dr. Rapchik as "carrying someone on his back," with pain between the shoulder blades occurring twice a week for approximately one minute. The plain-

tiff has not been hospitalized for chest pain. He noted that the plaintiff was able to walk, sit, stand, get up from a chair and onto the exam table without difficulty or breathlessness. Dr. Rapchik summarized by stating that the plaintiff was a mildly obese 58 years old white male with hypertension and no evidence of end organ disease, who complains of chest pain and shortness of breath. He showed a complete right bundle branch block on EKG, and there was evidence of old thoracotomy on exam. The plaintiff has a recent positive treadmill stress test. The plaintiff complains of circulation problems with no actual history of exercise related pain, and the plaintiff complains of night cramps. There was no evidence of significant vascular abnormalities on exam. Dr. Rapchik's final impressions revealed: 1) hypertension; 2) chest pain and shortness of breath, anginal by history; 3) "night cramps" in the lower extremities, by history and 4) obesity, exogenous, mild.

A final medical report, dated August 18, 1982, was submitted by interrogatory to the Appeals Council, after the ALJ rendered his decision. The report indicated that Dr. Gelber, a specialist in cardiovascular diseases, first examined the plaintiff on May 18, 1979, and last examined him on June 12, 1982, with a total of six examinations. The report stated that the plaintiff has ischemic heart disease with chest pain of cardiac origin and that on February 3, 1981, a treadmill exercise test was considered positive. The test specifically showed a 2 mm. horizontal ST depression in lead U2 which was painless. Additionally, Dr. Gelber found that the plaintiff's condition demonstrated by his specific findings stated above, lasted or could reasonably be expected to last for a period of 12 continuous months. The undersigned notes that this information was conveyed in Dr. Gelber's letter dated February 13, 1981 (R. 1011), and was given to Dr. Rapchik by the plaintiff. The plaintiff's attorney, in his "Brief in Support of plaintiff's Claim for Social Security Benefits Under 42 U.S.C.A. 416 and 423" (Docket # 7) states that this report was forwarded to the Appeals Coun-

cil in order to clarify the issue of whether or not the plaintiff's impairment meets or equals Listing § 4.04(A)(1) contained in Appendix 1, Subpart P of Regulation No. 4. The Appeals Council stated that this is not new information, and did not change the findings of the ALJ. (R. 3).

## DISCUSSION

The undersigned has made a careful and thorough review of the entire record. It is this court's duty to determine whether the decision of the Secretary is supported by substantial evidence. This court can appreciate the difficulty of the decisions rendered daily by the ALJ and the Secretary. [Generally, their decisions have been found to be correct.] In this instance, this court does not believe that the Secretary relied upon substantial evidence in making her determination, as will be discussed, and concludes that the decision by the Secretary must be reversed.

20 C.F.R. Section 404.1520(d) provides for an automatic finding of disability, without considering a claimant's age, education and work experience, when his impairment meets or equals a listed impairment in Appendix 1 and meets the duration requirement.

20 C.F.R., Chapter III, Appendix 1, Part A, Section 4.04(A)(1)[5] provides that an individual with ischemic heart disease accompanied by chest pain of cardiac origin is disabled if an acceptable treadmill test demonstrates "[h]orizontal or downsloping ischemic depression of the ST segment to 1.0 mm. or greater, clearly discernible in at least two consecutive complexes which are on a level baseline in any lead" at an exercise level of 5 METS or less.

The test given the plaintiff by his treating cardiologist, Dr. Philip Gelber, on February 3, 1981, demonstrated a positive treadmill test using the Bruce protocol. It specifically found a 2 mm. horizontal ST segment depression in lead U2. There was no finding of chest pain during the test. The condition met the 12 continuous months duration requirement (R. 132, 101).

This test indicates that Blumberg has a medical impairment of sufficient severity to support a finding of disability if he additionally experiences chest pain of cardiac origin.

The Secretary concedes that the plaintiff has a positive treadmill test consistent with the requirements of § 4.04(A)(1) (Motion for Judgment on the Pleadings, Docket # 10,5) and (Defendant's response to Brief in Support of plaintiff's Claim pursuant to this court's Order). The Secretary disputes, however, that the plaintiff experiences chest pain of cardiac origin as described in Section 4.00(E), which is required for a finding of disability under the Listing.

Section 4.00(E).

Chest pain of cardiac origin is *considered to be pain which is precipitated by effort and promptly relieved by sublingual nitroglycerin or rapid-acting nitrates or rest. The character of the pain is classically described as crushing, squeezing, burning, or oppressive pain located in the chest. Excluded is sharp, sticking or rhythmic pain. Pain occurring on exercise should be described specifically as to usual inciting factors (kind and degree), character, location, radiation, duration, and response to nitroglycerin or rest.* (emphasis supplied).

---

**5.** 4.04 *Ischemic Heart Disease with Chest Pain of Cardiac Origin as Described in 4.00E. With:*
 A. Treadmill exercise test (see 4.00F and G) demonstrating one of the following at an exercise level of 5 METS or less:
 1. Horizontal or down-sloping ischemic depression of the ST segment to 1.0 mm. or greater, clearly discernible in at least two consecutive complexes which are on a level baseline in any lead; or

 2. Premature ventricular systoles which are multiform or bidirectional or are sequentially inscribed (3 or more); or
 3. ST segment elevation to 3 mm. or greater; or
 4. Development of second or third degree heart block; or....

So-called "anginal equivalent" locations manifested by pain in the throat, arms, or hands have the same validity as the chest pain described above.

Status anginosus and variant angina of the Prinzmetal type (e.g., rest angina with transitory ST elevation on electrocardiogram) will be considered to have the same validity as classical angina pectoris as described above. Shortness of breath as an isolated finding should not be considered as an anginal equivalent. Chest pain that appears to be of cardiac origin may be caused by noncoronary conditions. Evidence for the latter should be actively considered in determining whether the chest pain is of cardiac origin. Among the more common conditions which may masquerade as angina are gastrointestinal tract lesions such as biliary tract disease, esophagitis, hiatal hernia, peptic ulcer, and pancreatitis; and musculoskelatal lesions such as costochondritis and cervical arthritis.

■ This court finds from close scrutiny of the entire administrative record that there is a lack of substantial evidence to support the Secretary's decision that the plaintiff does not suffer chest pain of cardiac origin as described under Section 4.00(E). Rather, the court affords due deference to the treating physician's opinion that the plaintiff suffers chest pain of cardiac origin, and finds that the plaintiff has a condition clearly meeting the Listing in Section 4.04(A)(1).

Initially, this court notes that the report of the ALJ contains a distortion in his evaluation of the evidence regarding his angina condition.

The ALJ states:

The medical evidence shows that the claimant had a positive treadmill test, he had a right bundle branch block, but surgery was not recommended. Furthermore, *the claimant's chest pain is described by Dr. Rapchik as not angina in nature.* The claimant had no actual history of exercise related pain, he had night cramps and "indigestion", but no

actual angina type pain. (R. 16–17). (emphasis supplied.)

The court notes that Dr. Rapchik, the consultative physician, never stated that the plaintiff's chest pain was not angina in nature. Rather, in regards to chest pain, Dr. Rapchik had reported: "There is no chest pain precipitated by palpation of the chest wall," (R.117) and "Patient complains of 'circulation problems' with no actual history of exercise related pain." (R.116, 119). Further, Dr. Rapchik's final impressions indicated: "chest pain and shortness of breath, *anginal by history.*" (emphasis supplied.) (R. 119). Therefore, the ALJ's statement that "... the claimant's chest pain is described by Dr. Rapchik as not angina in nature" is simply incorrect.

A look at the medical reports is now in order to demonstrate that there is no substantial evidence to support the Secretary's position that plaintiff's chest pain is not of cardiac origin.

On June 9, 1981, Dr. Gelber, the plaintiff's treating cardiologist noted that the plaintiff experienced three to four episodes of chest discomfort per week, generally with effort. The plaintiff's dosage of Corgard and Isosorbide Dinitrate was increased. It is noted that the plaintiff was required to take the Isosorbide Dinitrate four times a day. The undersigned notes that Isosorbide Dinitrate is a nitrate, and nitrates are one of the relief causing agents listed under Section 4.00(E) for chest pain of cardiac origin.

On December 18, 1981, Dr. Gelber filed a form with the Office of Disability Determinations describing the plaintiff's chest pain as "pain of cardiac origin" located in the midsternal area. The pain is characterized as pressing, does not radiate, is brought on by effort and relieved by rest. (R.108). These characteristics meet the considerations for a finding of chest pain of cardiac origin under 4.00(E).

Dr. Rapchik, the Secretary's consultative physician did not refute the plaintiff's allegation of pain in his report. Rather, he included in his final impressions, "chest pain and shortness of breath, anginal by

history." While Dr. Rapchik noted that the plaintiff could walk, sit, stand, get up from a chair and onto the examination table without difficulty or breathlessness, (R.118), he did not test for pain on exertion. This finding alone is not substantial evidence that the plaintiff does not have chest pain of cardiac origin.

■ Dr. Gelber, the treating physician, performed the necessary diagnostic tests to indicate a finding of angina pectoris.[6] Unless there is good cause shown to the contrary, the opinion of the treating physician, whose familiarity with the patient's course of treatment and responses over a considerable length of time should be given considerable weight over the consulting physician who examined the patient only once. *See Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981), *Fruge v. Harris*, 631 F.2d 1244 (5th Cir.1980). In light of the undisputed evidence, this court fails to find good cause to the contrary.

Additionally, a Disability Determination Rationale, dated January 13, 1982, states in pertinent part:

Although you may have pains in your chest from time to time, special testing shows satisfactory heart function for your usual activities. (R.56).

The undersigned finds, it relevant that evidence of chest pain was indeed acknowledged.

■ Section 4.00d of the regulations [7] indicates that an individual has ischemic heart disease if he experiences cardiac chest pain and, in addition, there is objective medical evidence, such as the positive treadmill test, which supports the "clinical impression of chest pain." It does not require the chest pain of cardiac origin to occur at any designated minimum level of frequency or duration, nor does it require it to occur during the objective test. *See Jackson v. Schweiker*, 696 F.2d 630 (8th Cir.1983) (court held that lack of chest pain during the treadmill exercise test was not determinative as to social security benefits where there was undisputed evidence elsewhere in the record that the claimant experienced frequent chest pain). Rather in order to support an automatic finding of disability according to the literal, textual language of § 4.04(A)(1), an individual must merely demonstrate an objective test consistent with the requirements, and experience chest pain of cardiac origin.

■ Additionally, the undersigned notes that Section 4.00(E) indicates that chest pain that appears to be of cardiac origin may be caused by noncoronary conditions, and that evidence for the latter should be actually considered in determining whether the chest pain is of cardiac origin. Section 4.00(E) further indicates the common conditions which may masquerade as angina, i.e. biliary tract disease, esophagitis, hiatal hernia, peptic ulcer, pancreatitis, costochondritis and cervical arthritis. The court finds that there is *no evidence* in the entire record that the plain-

---

**6.** *Laboratory Examination* —The tentative diagnosis of ischemic heart disease may frequently be made by means of the history, but in the absence of a history of documented infarction, the definitive diagnosis requires laboratory confirmation. Laboratory evaluation of all patients with suspected or documented coronary disease should include a electrocardiogram at rest and chest roentgenogram.

The electrocardiogram may establish the diagnosis of ischemic heart disease if characteristic changes are present. The absence of abnormalities, however, by no means excludes the diagnosis. The 12-lead electrocardiogram recorded at rest and in the absence of pain is normal in approximately one-half of patients with typically angina pectoris and arteriographically demonstrable coronary artherosclerosis.

*When a diagnosis cannot be established with these techniques, the indicated procedure is electrocardiographic stress testing,* (emphasis supplied), which in certain instances is followed by radionuclide studies and/or coronary arteriography. A positive response to a therapeutic trial of nitroglycerin is also helpful in supporting the diagnosis of angina pectoris. *See Harrison's Principles of Internal Medicine,* Chapter 260. Ischemic Heart Disease, "Angina Pectoris" pp. 1425–1431.

**7.** *Ischemic heart disease* may result in severe impairment due to chest pain. Description of pain must contain the clinical characteristics as discussed under 4.00(E). In addition, the clinical impression of chest pain of cardiac origin must be supported by objective evidence as described under 4.00(F), (G), or (H).

tiff suffers from any of the above stated alternative conditions.

CONCLUSION

After a thorough review of the entire record, the undersigned is convinced that there is no substantial evidence, not even a scintilla, to support the Secretary's position that plaintiff's chest pain is not of cardiac origin. Therefore, this court finds that the plaintiff has a condition clearly meeting the Listing in Section 4.04(A)(1) contained in Appendix 1, Subpart P of Regulation No. 4.

Thus, this court, having considered the record in this cause, and being fully advised in the premises, RECOMMENDS that the decision of the Secretary of Health and Human Services be REVERSED.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties may serve and file written objections to this report with the Honorable Alcee L. Hastings, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982).